MITCHELL SILBERBERG & KNUPP LLP
Paul V. LiCalsi (PL-6622)
Howard H. Weller (HW-2745)
12 West 49th Street
New York, N.Y. 10020
(212) 509-3900

*Attorneys for Defendants Taylor Swift, Scott Swift*
*and Andrea Swift*


## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK


DANIEL DYMTROW,                          )
                                         )
            Plaintiff,                   )
                                         )        Civil Action No. 07 CV 11277 (RJS)
      v.                                 )
                                         )
TAYLOR SWIFT, SCOTT SWIFT and            )
ANDREA SWIFT,                            )
                                         )
            Defendants.                  )


### DEFENDANTS TAYLOR SWIFT, SCOTT SWIFT AND ANDREA SWIFT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

ARGUMENT ..........................................................................................................................3

I.      PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE
TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6) ................................................................................................3

     A.      Introduction: Standard for 12(b)(6) Dismissal ................................................3

     B.      Plaintiff's Claim for Unjust Enrichment and Other Quasi-Contract
Theories Must Be Dismissed ........................................................................4

     C.      Plaintiff's Claim for Breach of Contract Against Taylor's Parents
Must Be Dismissed .......................................................................................8

     D.      Plaintiff's Claim for Promissory Estoppel and Estoppel in Pais
Must Be Dismissed.......................................................................................11

         1.      Promissory Estoppel ........................................................................12

         2.      Estoppel in Pais ...............................................................................14

     E.      New York Law Prohibits Plaintiff's Claim for Tortious
Interference with Prospective Economic Opportunity ...................................15

     F.      Plaintiff's Claim for Breach of Implied Covenant of Good Faith
and Fair Dealing Must Be Dismissed ............................................................19

CONCLUSION ......................................................................................................................21

1780706.3

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American-European Art Assoc. v. Trend Galleries, Inc.*,
227 A.D.2d 170, 641 N.Y.S.2d 835 (1st Dep't 1996) ................................................................. 20

*Bright Tunes Productions, Inc. v. Lee*,
43 Misc. 2d 21, 249 N.Y.S.2d 632 (Sup. Ct. 1964) ..................................................................... 7

*Carell v. The Shubert Organization, Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ............................................................................................ 3

*Cohen v. Brunswick Record Corp.*,
31 Misc. 2d 525, 221 N.Y.S.2d 893 (Sup. Ct. 1961) ..............................: ....................... 6, 13, 16, 17

*Deutsch v. Kroll Associates, Inc.*,
No. 02 Civ. 2892, 2003 U.S. Dist. LEXIS 16613 (S.D.N.Y. 2003) ........................................ 13

*E.R. Squibb & Sons v. Ira J. Shapiro, Inc.*,
64 N.Y.S.2d 368 (Sup. Ct. 1945) ................................................................................................ 17

*Everfresh Beverages, Inc. v. Charterhouse Group International, Inc. et al.*,
238 B.R. 558 (S.D.N.Y. 1999) ...................................................................................................... 3

*Gotham Boxing Inc. v. Finkel*,
Nos. 601479-07, 2008 ................................................................................................................. 20

*Graff v. Enodis Corp.*,
No. 02 Civ. 5922, 2003 U.S. Dist. LEXIS 4899 (S.D.N.Y. 2003) .......................................... 13

*Henneberry v. Sumitomo Corp of America*,
No. 04 Civ. 2128, 2007 WL 2068346 (S.D.N.Y. 2007) ........................................................... 18

*International Minerals and Resources, Inc. v. Pappas*,
761 F. Supp. 1068 (S.D.N.Y. 1991) ............................................................................................ 18

*Kramer v. Pollock-Krasner Foundation*,
890 F.Supp. 250 (S.D.N.Y. 1995) ............................................................................................... 18

*Lee v. Silver*,
262 A.D. 149, 28 N.Y.S.2d 333 (1st Dep't 1941) ............................................................... passim

*Leeds v. Meltz*,
85 F.3d 51 (2d Cir. 1996) ............................................................................................................. 3

*Metropolitan Model Agency USA, Inc. v. Rayder*,
168 Misc. 2d. 324, 643 N.Y.S.2d 923 (Sup. Ct. 1996) ....................................................... passim

*Prinze v. Jonas*,
38 N.Y.2d 570, 345 N.E.2d 295, 381 N.Y.S.2d 824 (1976) ...................................................... 7

*Production Products Co. v. Vision Corp.*,
270 A.D.2d 922, 706 N.Y.S.2d 289 (4th Dep't 2000) ............................................................... 4

1780706.3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Readco, Inc. v. Marine Midland Bank,*
    81 F.3d 295 (2d Cir. 1996) .......................................................................................... 14

*Reiter Sales, Inc. v. Scovill Fasteners, Inc.,*
    9 Misc. 3d 1109A, 806 N.Y.S.2d 448 (Sup. Ct. 2005) ........................................ 12, 14

*Ripple's of Clearview, Inc. v. Le Havre Associates,*
    88 A.D.2d 120, 452 N.Y.S.2d 447 (2d Dep't 1982) .................................................. 12

*Schorr v. Guardian Life Ins. Co. of America,*
    44 A.D.3d 319, 843 N.Y.S.2d 24 (1st Dep't 2007) ................................................... 20

*Soumayah v. Minnelli,*
    41 A.D.3d 390, 839 N.Y.S.2d 79 (1st Dep't 2007) ..................................................... 4

*Spadafor v. Reale,*
    2001 WL 1020359 (S.D.N.Y. Sept. 5, 2001) ............................................................... 4

*Swits v. New York Systems Exchange Inc.,*
    281 A.D.2d 833, 722 N.Y.S.2d 300 (3d Dep't 2001) ............................................... 4, 5

*Troni v. Banca Popolare Di Milano,*
    1990 WL 165684 (S.D.N.Y. Oct. 26, 1990) ................................................................. 3

### Statutes

ARTS & CULT. AFF. LAW § 35.03(1) ............................................................................. 10
ARTS & CULT. AFF. LAW § 35.03(2)(d) ...................................................................... 6, 7
ARTS & CULT. AFF. LAW § 35.03(5)(k) ......................................................................... 6
ARTS & CULT. AFF. LAW § 35.03 ......................................................................... 6, 7, 10
ARTS & CULT. AFF. LAW § 35.05 ................................................................................... 8

CPLR § 105 ..................................................................................................................... 5

GEN. OBLIG. LAW § 3-101 ............................................................................................. 7
GEN. OBLIG. LAW § 3-107 ......................................................................... 8, 10, 11, 12
GEN. OBLIG. LAW § 3-105 ........................................................................................... 10

N.Y. Jur. Estoppel § 3 ................................................................................................... 14

### Other Authorities

2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[1][b] (3d ed. 2002) ...................... 4

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 3
Federal Rules of Civil Procedure 9(b) .......................................................................... 19

1780706.3

This memorandum of law is respectfully submitted on behalf of Defendants Taylor Swift, Scott Swift and Andrea Swift ("Defendants") in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint of Plaintiff Daniel Dymtrow, dated December 14, 2007, in its entirety, for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Singer and songwriter Taylor Swift ("Taylor") signed a management contract with Defendant when she was fourteen years old, and disaffirmed that contract, as was her legal right, when she was fifteen. Plaintiff's Complaint is an egregious effort to circumvent the well settled principles of New York law that give a minor the absolute right to disaffirm a contract. New York has constructed an elaborate statutory structure to protect minors from improvident contract decisions. New York provides a procedure whereby a minor's right to disaffirm may be limited *only* if the contract is submitted for court scrutiny and approval. Plaintiff failed to follow this procedure, and now attempts an end run around clear New York law with imaginative and fatally deficient claims against Taylor and her parents, Scott and Andrea Swift. After lying dormant for nearly three years, Plaintiff manufactures causes of action in an attempt to turn Taylor's valid exercise of her right to disaffirm into a grab for income that he never earned. Plaintiff's allegations, even if taken as true, cannot support his claims for (1) unjust enrichment and other quasi-contract theories, (2) breach of contract, (3) promissory estoppel and estoppel in pais, (4) tortious interference with prospective economic opportunity, and (5) breach of implied covenant of good faith and fair dealing. As all of these claims are legally deficient against each defendant against whom they are alleged, and for the reasons stated herein, Defendants request that this Court dismiss the Complaint in its entirety against each of them.

## STATEMENT OF FACTS

While Plaintiff's version of events set forth in his Complaint is often inaccurate, Defendants assume for purposes of this motion only the truth of the facts alleged in the Complaint. The Complaint alleges that Plaintiff is a music industry personal manager. (Compl. ¶ 9). Plaintiff alleges he entered into an exclusive personal management agreement with Taylor (the "EPMA") (Compl. ¶ 2), signed on or about April 5, 2004, and made effective as of March 25, 2003 (Compl. ¶ 17). The EPMA states, "[t]his agreement has been entered into in the State of New York, and the validity, interpretation, and legal affect [sic] of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York." (Compl. Ex. A, p. 5). Taylor was thirteen years old when Plaintiff agreed to manage her. (Compl. ¶ 1). Taylor's parents signed papers purporting to guarantee the performance by Taylor of all of her obligations and services detailed in the EPMA. (Compl. ¶ 19).

Plaintiff alleges that on or about March 7, 2005, Plaintiff began negotiating the terms of a record contract on behalf of Taylor with a newly formed record label. (Compl. ¶ 35). Plaintiff claims he "pursued talent agency opportunities" for Taylor "before the EPMA was disaffirmed." (Compl. ¶ 40). On or about August 1, 2005, Taylor, through her lawyer, sent a letter "purporting to disaffirm the EPMA." (Compl. ¶ 37). Plaintiff then alleges that Taylor's father induced his daughter to disaffirm the EPMA. (Compl. ¶ 51).

Plaintiff implicitly concedes that Taylor validly disaffirmed the EPMA. (Compl. ¶ 78). Plaintiff concedes he did not apply to the court for approval. (Compl. ¶ 22). There is no allegation that Taylor did not have the right to disaffirm the EPMA. Taylor's absolute right to

2

disaffirm an agreement she made as a minor, and the lack of any legally relevant allegations that could overcome this absolute right, mandates dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

#### A.   Introduction:  Standard for 12(b)(6) Dismissal

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Carell v. The Shubert Organization, Inc.*, 104 F. Supp. 2d 236, 246 (S.D.N.Y. 2000).  While a court must accept the factual allegations of the complaint as true, it is "by no means under a concomitant obligation to accept unsupported inferences or 'sweeping legal conclusions cast in the form of factual allegations.'" *Troni v. Banca Popolare Di Milano*, 1990 WL 165684, at *2 (S.D.N.Y. Oct. 26, 1990) (citations omitted).  "'[L]iberal construction of pleadings should not be permitted to override completely the rights of defendants.'" *Id.* (citations omitted); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (granting 12(b)(6) motion stating that "bald assertions and conclusions of law will not suffice"); *Everfresh Beverages, Inc. v. Charterhouse Group International, Inc. et al.*, 238 B.R. 558, 571 (S.D.N.Y. 1999) (noting the that the pleading standard is a liberal one but warning that "even liberal construction has its limits").

Thus, a pleading "must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief" can be found.  2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[1][b] (3d ed. 2002).  Moreover, it is the legal sufficiency of the complaint, "not the weight of any evidence offered in support of the action" that is to be assessed. *Spadafor v. Reale*, 2001 WL 1020359, at *1 (S.D.N.Y. Sept. 5, 2001).

## B.    Plaintiff's Claim for Unjust Enrichment and Other Quasi-Contract Theories Must Be Dismissed

Plaintiff claims unjust enrichment and other quasi-contract theories in an attempt to override a minor's absolute right to disaffirm a contract.[1]  To state a claim for unjust enrichment, Plaintiff must allege that Defendants were enriched at his expense and that it is against equity and good conscience to permit them to retain such enrichment. *Swits v. New York Systems Exchange Inc.*, 281 A.D.2d 833, 835, 722 N.Y.S.2d 300, 302 (3d Dep't 2001).  To state a claim for quantum meruit, another quasi-contract theory, Plaintiff must plead (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. *Soumayah v. Minnelli*, 41 A.D.3d 390, 391, 839 N.Y.S.2d 79, 81 (1st Dep't 2007).  A claim for unjust enrichment, or any other quasi-contract theory, cannot lie when there exists a valid written contract. *Swits,* 281 A.D.2d at 836, 722 N.Y.S.2d at 302; *Production Products Co. v. Vision Corp.*, 270 A.D.2d 922, 923, 706 N.Y.S.2d 289, 291 (4th Dep't 2000) (no recovery

---

[1]    Plaintiff shoehorns multiple causes of action and undefined causes of action into his purported "first cause of action," creating the unworkable task of determining which allegations Plaintiff intends to support which causes of action.

4

under quasi-contract theory because of written agreement, where agreement was lawfully terminated).

In *Swits, supra*, the defendant engaged the plaintiff as a sales representative and paid the plaintiff commissions in accordance with a written agreement. 281 A.D.2d at 834, 722 N.Y.S.2d at 301. After the defendant terminated its affiliation with the plaintiff, the plaintiff claimed, among other things, nonpayment of commissions on leases which the plaintiff had originated prior to termination but which were renewed or extended post-termination. *Id.* The court dismissed plaintiff's claim for unjust enrichment because "the existence of a valid written contract precludes recovery on a quasi-contract theory." *Id.* at 836, 722 N.Y.S.2d at 302.

Similarly here, Taylor entered into a valid written agreement with Plaintiff to help market her services. Taylor terminated her agreement with Plaintiff by disaffirming it, as was her right under the laws of New York. The agreement contained no provision for payment of commissions in the event of termination by Taylor's disaffirmation. Accordingly, Plaintiff's claim for unjust enrichment and other quasi contract theories must be dismissed because of the existence of the valid written agreement.[2]

Plaintiff's unjust enrichment and other quasi contract claims also contravene New York's public policy of protecting the rights of an infant to disaffirm contracts made during infancy.[3] New York has a public policy of protecting infants from their own improvidence. *Metropolitan Model Agency USA, Inc. v. Rayder*, 168 Misc. 2d. 324, 327, 643 N.Y.S.2d 923, 925 (Sup. Ct.

---

[2]    Furthermore, the claim must fail because Plaintiff has been adequately compensated for services rendered under the terms of the contract -- there is no allegation that Taylor refused to pay the commissions on her income or contracts signed prior to the agreement's termination.

[3]    An infant is "a person who has not attained the age of eighteen years." CPLR § 105. As used in this memorandum, the words "infant" and "minor" are interchangeable.

1996). Infants have an "absolute right" to disaffirm agreements on the ground of infancy.

*Cohen v. Brunswick Record Corp.*, 31 Misc. 2d 525, 527, 221 N.Y.S.2d 893, 895 (Sup. Ct. 1961)

(defendant record company is not liable for inducing infant to exercise her legal right to

disaffirm her prior recording agreement). New York's policy is strong, as evidenced by the

courts' decisions in *Metropolitan Model, supra,* and *Lee v. Silver*, 262 A.D. 149, 28 N.Y.S.2d

333 (1st Dep't 1941). In *Metropolitan Model*, the court, on the ground of New York public

policy, applied New York law instead of Florida law in order to void a parental guarantee of an

infant's modeling contract, "[a]lthough New York courts would ordinarily apply the law of a

sister state has provided for in the contract." *Metropolitan Model*, 168 Misc. 2d. at 327,

643 N.Y.S.2d at 926. In *Lee, supra*, the court, on the ground of New York public policy, barred

the possibility of a tortious interference claim based on a parent's advise to her child to disaffirm

a contract, preventing "any inquiry as to motive." 262 A.D. at 151, 28 N.Y.S.2d at 336.

New York's policy of protecting infants from their own improvidence finds further

expression through the legal process it requires to remove the right of an infant to disaffirm a

contract. ARTS & CULT. AFF. LAW § 35.03 provides a method for securing court approval of an

entertainment contract to remove the right of disaffirmance, which requires a showing "that the

contract is reasonable and provident and for the best interests of the infant." ARTS & CULT. AFF.

LAW § 35.03(5)(k). § 35.03 provides that no contract shall be approved if the term during which

a person is employed to render services to the infant extends for a period of more than three

years from the date of approval of the contract, unless the infant is represented by experienced

entertainment counsel, which raises the limitation to seven years. ARTS & CULT. AFF. LAW

§ 35.03(2)(d). If the contract contains any covenant or condition that extends beyond those time

frames, it may be approved only if the covenant or condition is found to be reasonable by the

6

court. *Id.* New York further protects the ability of an infant to disaffirm an entertainment contract not approved by the court by voiding a parental guarantee of such a contract, where the infant or performance is connected to New York. GEN. OBLIG. LAW § 3-107.

Allowing a claim for unjust enrichment based on Taylor's exercise of her absolute right to disaffirm would override this deep-rooted New York public policy. Since Taylor's contract with Defendant was never approved under ARTS & CULT. AFF. LAW § 35.03, she retains the absolute right to disaffirm the contract made during her infancy. GEN. OBLIG. LAW § 3-101. Furthermore, the EPMA could not have been judicially approved, since it extends for an unknowably long period of time. (Compl. Ex. A, p. 1, agreement ends "upon the expiration of the 'Second Album Cycle'"; Compl. Ex. A., p. 2, "manager's participation in Artist's Gross Income earned… shall continue for a period of four (4) years following the expiration"). This unknowably long time period covered by the EPMA indicates the contract was never in the best interests of Taylor. *See Bright Tunes Productions, Inc. v. Lee*, 43 Misc. 2d 21, 23-24, 249 N.Y.S.2d 632, 634-35 (Sup. Ct. 1964) (legislature has indicated that contracts in excess of three years are not reasonable and provident by making such contracts ineligible for judicial approval); *Prinze v. Jonas*, 38 N.Y.2d 570, 576, 345 N.E.2d 295, 299, 381 N.Y.S.2d 824, 829 (1976) (In the context of GEN. OBLIG. LAW § 3-101, "duration, together with the other provisions, is relevant in determining the reasonableness of the contract").

New York's public policy of protecting infants from their improvident contracts is designed to allow the disaffirmance *of this very type of contract* – an overreaching contract of indeterminate duration that binds an infant to a man who wants to take as much of her earnings as he can get for himself. Plaintiff's claim is a blatant attempt to render Taylor's right to disaffirm a nullity. Plaintiff's claim for unjust enrichment and other quasi-contract theories must

7

be dismissed because he cannot meet the legal standard for unjust enrichment or other quasi-contract theories, and because he cannot be allowed to circumvent the clear public policy of New York.

### C.    Plaintiff's Claim for Breach of Contract Against Taylor's Parents Must Be Dismissed

In an end-around Taylor's absolute right to disaffirm the contract, Plaintiff tries to hold Taylor's parents to a guarantee of Taylor's performance. The court must dismiss Plaintiff's claim for breach of contract because New York has a well established public policy of protecting the absolute right of infants to disaffirm their contracts. *See* Section B, *supra*. New York has given teeth to its policy by voiding parental guarantees of infant's contracts. *Metropolitan Model Agency USA, Inc. v. Rayder*, 168 Misc. 2d. 324, 327, 643 N.Y.S.2d 923, 925-26 (Sup. Ct. 1996); GEN. OBLIG. LAW § 3-107 (parental guarantees minor's unapproved entertainment contracts connected with New York are void).

*Metropolitan Model* is directly on point. Francesca, a minor, contracted with a model agency to be her exclusive "personal managers." *Metropolitan Model*, 168 Misc. 2d at 325, 643 N.Y.S.2d at 924. Francesca's parents signed a guarantee to her contract, which included the clause, "We agree that this guarantee shall be construed and governed in accordance with the laws of the state of Florida." *Id.* at 326, 643 N.Y.S.2d at 925. Francesca did not re-execute the agreement upon reaching the age of majority, and engaged another model agency to replace the plaintiff. *Id.* The agreement between the plaintiff and Francesca was found to be void because no party ever obtained a child model work permit as required by ARTS & CULT. AFF. LAW

8

§ 35.05. *Id.* at 327, 643 N.Y.S.2d at 925. The court refused to apply Florida law as it "would ordinarily," and refused enforce the parental guarantee, explaining:

> New York has had a public policy of protecting minors from their own improvidence. To this end, the State has enacted numerous statutes to ensure that minors will not be exploited by adults.

> In view of this public policy, the court also finds the guarantee between Metropolitan and the parents is void since the guarantee was an attempt to circumvent the requirements of Art. & Cult.Aff. Law § 35.05… [I]t also effectively puts substantial pressure on the parents to urge their daughter to comply with an agreement she entered into as a minor, even if that agreement is not otherwise enforceable. The court will not permit plaintiffs to collect damages under the guarantee since to do so would effectively avoid the State's public policy of protecting minors. Although New York courts would ordinarily apply the law of a sister state as provided for in the contract and give full faith and credit to such law, New York courts will not apply the law of a sister state when to do so would violate our public policy.

*Id.* at 327, 643 N.Y.S.2d at 925-26 (*citations omitted*).

The similarities of *Metropolitan Model* to the case at hand are striking. In both cases, a minor engaged a personal manager she later regretted. Like the Metropolitan Model Agency, Plaintiff is trying to use a parental guarantee in a blatant attempt to circumvent a New York law designed to protect minors, a law that ought to lead to the termination of a contract. Taylor's parents, like Francesca's, would have been under substantial pressure to urge their daughter to comply with an agreement she entered into as a minor if their guarantee were enforceable. The case of *Lee v. Silver, supra,* is also instructive. 262 A.D. 149, 28 N.Y.S.2d 333 (1st Dep't 1941). There the court, as in *Metropolitan Model,* expressed an unwillingness to put pressure on parents to force their children to comply with a contract made during their infancy. In *Lee,* New York's public policy barred any parental liability for advising an infant child to disaffirm a contract

9

because "parents should have the right to advise their infant children with regard to all matters." *Id.* 151, 28 N.Y.S.2d at 336.

The strong public policy that prevents a minor's right to disaffirm from becoming a nullity finds further voice in GEN. OBLIG. LAW § 3-107, which explicitly voids parental guarantees of unapproved entertainment contracts connected to New York. The purported guarantees of Taylor's parents are voided by the letter and intent of GEN. OBLIG. LAW § 3-107. A contract made by an infant to render services as a "musician, vocalist or other performing artist" or a contract where "a person is employed to render services to the infant in connection with such services" (collectively "§ 35.03 Contract") may be submitted to a court for approval. ARTS & CULT. AFF. LAW § 35.03(1). Unless the contract is so approved, no parent of the infant making such a contract shall be liable on the contract "either as a party or as a guarantor" if (1) the infant disaffirms the contract and was a resident of New York at the time the contract was made, or (2) the infant refuses to perform services "required or permitted by the contract to be performed or rendered" in New York, or the parent refuses "to cause such services to be rendered or performed." GEN. OBLIG. LAW § 3-107.[4]

The EPMA is a § 35.03 Contract because Plaintiff agreed to render services to Taylor, then an infant (Exhibit A, p. 6), as her "exclusive personal manager in the 'Entertainment Industry.'" (Exhibit A, p. 1). The EPMA was never approved by a court (Compl. ¶ 22). When Taylor disaffirmed the contract, she was refusing to "promptly advise Manager of all viable offers of employment" (Exhibit A, p. 1), who was located in New York (Compl. ¶ 5). Taylor was also refusing to perform "services detailed in the EPMA" (Compl. ¶ 19) or "services under

---

[4]    GEN. OBLIG. § 3-107 applies to contracts covered by GEN. OBLIG. § 3-105, which has been replaced by ARTS & CULT. AFF § 35.03.

1780706.3

the EPMA" (Compl. ¶ 84). Since all conditions of GEN. OBLIG. LAW § 3-107 are satisfied,

Taylor's parents cannot be liable for any purported "guarantee" they may have signed to the

EPMA.

Furthermore, Taylor is so connected to New York that the New York public policy

protecting the absolute right of infants to disaffirm their contracts, including GEN. OBLIG. LAW

§ 3-107, obviously is intended to protect Taylor. Plaintiff alleges that he and the Defendants met

in New York to discuss the basic terms and parameters of the EPMA. (Compl. ¶ 15). Plaintiff

claims to be a resident of New York City at the time he entered into agreements with Defendants.

(Compl. ¶ 5). The EPMA, by its own terms, "has been entered into in the State of New York,

and the validity, interpretation and legal affect [sic] of this agreement shall be governed by the

laws of the State of New York applicable to contracts entered into and performed entirely within

the State of New York." (Compl. Ex. A, p. 5). Clearly, New York has a substantial interest and

connection to this contract and the performance thereof. Thus, by reason of GEN. OBLIG. LAW

§ 3-107 and New York public policy, any guarantee by Taylor's parents is void, and Plaintiff's

second cause of action for breach of contract against Taylor's parents must be dismissed.

D.    **Plaintiff's Claim for Promissory Estoppel and Estoppel in Pais Must Be Dismissed.**

Plaintiff's claim for promissory estoppel and estoppel in pais against Taylor's parents

continues the series of Plaintiff's "everything including the kitchen sink" claims designed to

11

circumvent the established public policy of New York to protect a minor's absolute right to disaffirm her contract.[5]

### 1.    Promissory Estoppel

To establish a claim for promissory estoppel, a plaintiff must show: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." *Ripple's of Clearview, Inc. v. Le Havre Associates*, 88 A.D.2d 120, 122, 452 N.Y.S.2d 447, 449 (2d Dep't 1982). In order to recover on a claim for promissory estoppel, the Plaintiff must establish a substantial change in position resulting in an unconscionable injury. *Reiter Sales, Inc. v. Scovill Fasteners, Inc.*, 9 Misc. 3d 1109A, at *5, 806 N.Y.S.2d 448, at *5 (Sup. Ct. 2005). Plaintiff can do neither.

The crux of Plaintiff's allegations are that Taylor's parents made two basic promises: (1) "to guarantee that Artist would perform as expected," and (2) never "to encourage and/or suggest to Artist that she should disaffirm the EPMA." (Compl. ¶¶ 94, 96). The New York public policy of preserving the ability of infants to disaffirm improvident contracts, as discussed throughout this memorandum, prevents the use of a promissory estoppel claim to circumvent that policy. The first alleged promise is voided by New York law and public policy, as discussed in more detail above in Section C. *See Metropolitan Model Agency USA, Inc. v. Rayder*, 168 Misc. 2d 324, 327, 643 N.Y.S.2d 923, 925 (parental guarantee is void where it is an attempt to circumvent statute protecting minors in the modeling industry); GEN. OBLIG. LAW § 3-107. The

---

[5]    Plaintiff's purported "third claim" actually names two distinct causes of action: one for promissory estoppel and one for estoppel in pais. The squeezing of two separate claims into the same set of paragraphs results in an incomprehensible ambiguity as to what allegations are intended to support what claims.

second alleged promise is voided by New York law and public policy, as discussed in more detail below in Section E. *See Lee v. Silver*, 207 A.D.2d 955, 28 N.Y.S.2d 333 (1st Dep't 1941) (parent cannot be held liable for advising her child to disaffirm her contract); *Cohen v. Brunswick Record Corp.*, 31 Misc. 2d 525, 527, 221 N.Y.S.2d 893, 896 (Sup. Ct. N.Y. Co. 1961) ("plaintiff's rights in the agreements in question were enforceable merely at the will of the infant and no action can arise for inducing the legal termination thereof"). As both alleged promises on which Plaintiff rests his claim for promissory estoppel violate clearly established New York public policy, Plaintiff cannot sustain a claim for promissory estoppel.

Moreover, New York law does not recognize promissory estoppel in the employment context. *Deutsch v. Kroll Associates, Inc.*, No. 02 Civ. 2892, 2003 U.S. Dist. LEXIS 16613, at *8 (S.D.N.Y. 2003) (plaintiff's claims of promissory estoppel for failure to pay promised wages and severance benefits is dismissed); *see Graff v. Enodis Corp.*, No. 02 Civ. 5922, 2003 U.S. Dist. LEXIS 4899, at *7 (S.D.N.Y. 2003) (allegation that plaintiff relied on a promise to leave his previous employ and forego a change of employment is insufficient as a matter of law to support a claim for promissory estoppel). Plaintiff alleges an employment context, a "professional relationship" between Plaintiff and Taylor whereby Plaintiff would "perform managerial services for Artist and Parents in exchange for compensation" (Compl. ¶ 73). The EPMA states that "Manager shall be Artist's exclusive personal manager" (Compl. Ex. A, p. 1). Plaintiff's claims demonstrate an employment context and employment relationship, so Plaintiff cannot claim promissory estoppel as a matter of New York law.

Furthermore, Plaintiff does not allege an unconscionable injury or a substantial change in his position. The only detriments alleged are the "efforts" Plaintiff expended on behalf of Taylor (Compl. ¶ 98), for which Plaintiff has already received commissions based on money earned and

contracts signed by Taylor prior to the disaffirmation of the EPMA. Receiving bargained for compensation is not unconscionable, nor is losing expected future income due to the discontinuance of the EPMA pursuant to Taylor's legal right. *See Reiter Sales*, 9 Misc. 2d 1109A, at *5, 806 N.Y.S.2d 448, at *5 (loss of business and income from a contract's termination does not establish substantial change in position or unconscionable injury). Additionally, Plaintiff does not allege a substantial change in position, since Plaintiff fails to allege actions he would have undertaken had he not heard any of the purported promises.

For all of the reasons discussed in this Section, Taylor's parents cannot be held liable for promissory estoppel. Accordingly, Plaintiff's third claim for promissory estoppel must be dismissed.

### 2.    Estoppel in Pais

"Estoppel in pais" is an alternate name for "equitable estoppel." N.Y. Jur. Estoppel § 3. Under any name, this claim is another attempt to circumvent the established public policy of protecting the absolute right of minors to disaffirm their contracts. To assert a claim for equitable estoppel under New York law, the party asserting estoppel must show that the party alleged to be estopped "(1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct would be acted upon by the other party; and (3) knew the real facts." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) (*brackets omitted*). "In addition, the party alleging estoppel must also show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Id.* at 301-02.

14

This claim is fatally deficient as Plaintiff fails to adequately allege these elements. Plaintiff never alleges what *material facts* might be falsely represented or concealed. Plaintiff attempts to allege promises on behalf of Taylor's parents, but does not plead any *material facts* that were falsely represented or concealed. Nowhere in the complaint is there an allegation that Taylor's parents *intended* that any false representation or concealment would be acted upon. Plaintiff never alleges that Taylor's parents "knew the real facts," in part because he never alleges any *facts* that were misrepresented. Moreover, Plaintiff does not plead lack of knowledge of the "true facts." Plaintiff does not plead reliance on any specific conduct of Taylor's parents related to any false representation or concealment of facts. Finally, Plaintiff does not plead a prejudicial change in his position, since Plaintiff does not allege what he might have done differently had if he had known all the facts. The crucial material fact in this case is that Taylor was a minor when she signed the EPMA. Plaintiff knew Taylor was a minor, yet chose to contract with her anyway and then avoided a court's scrutiny and approval of the terms of that contract as required under New York law. To allow this claim to proceed any further would flout established New York public policy, as discussed above. Accordingly, Plaintiff's claim for estoppel in pais must be dismissed.

E.    **New York Law Prohibits Plaintiff's Claim for Tortious Interference with Prospective Economic Opportunity**

Plaintiff's claim that Taylor's father can be liable for inducing his daughter to disaffirm a contract is contrary to explicit New York law. As a matter of New York public policy, a parent of an infant child, even if acting maliciously, may advise the child to disaffirm a contract without incurring liability. *Lee v. Silver*, 262 A.D. 149, 151, 28 N.Y.S.2d 333, 336 (1st Dep't 1941). In *Lee*, the infant vocalist Elsa Harris Silver entered into a contract with the plaintiffs as managers

15

and personal representatives. *Id.* at 150, 28 N.Y.S.2d at 334. Elsa disaffirmed the agreement

while she was a minor. *Id.* One of the causes of action alleged against Elsa's mother was that

she "maliciously induced her daughter to repudiate the [sic] break the agreement." *Id.* at 151,

28 N.Y.S.2d at 335. Although the judge acknowledged that generally a cause of action existed

against a person who maliciously procured another to breach a contract for personal services, he

explained that parents should have immunity from this rule when advising their children to

disaffirm a contract:

> The wrongful act is malicious when done without legal or social
> justification. I do not believe that the rule should include advice
> given by a parent to an infant child to disaffirm a contract. *Public
> policy dictates that parents should have an absolute right to advise
> their infant children with regard to all matters; that such a right
> should be exercised freely and should not subject the parent to any
> inquiry as to motive.* Such an unrestricted right is one most
> calculated to promote the best interest of friendship.

*Id.* at 151, 28 N.Y.S.2d at 336 (*emphasis added*).

Plaintiff has alleged facts right in line with *Lee*. All of Plaintiff's allegations amount to

no more than the charge that Taylor's father induced Taylor to disaffirm the EPMA. (Compl.

¶ 104). Under *Lee*, Taylor's father is free to urge his daughter to disaffirm a contract, without

"any inquiry as to motive." *Lee*, 262 A.D. 151, 28 N.Y.S.2d at 336.

Subsequent law has confirmed a minor's right to disaffirm a contract without creating

liability for the person who urged the minor to do so. In *Cohen v. Brunswick Record Corp.*, the

plaintiff alleged that the defendant record company wrongfully induced an infant singer to

disaffirm his agreement with his prior record company in order to record for the defendant.

31 Misc. 2d 525, 526, 221 N.Y.S.2d 893, 895 (Sup. Ct. 1961). The Plaintiff admitted that under

16

California law the infant had the "absolute right" to disaffirm the agreement. *Id.* The court

wrote that "a similar right is afforded to infants by the laws of the state of New York." *Id.* at

527, 221 N.Y.S.2d at 895. The court dismissed the claim against the defendant, reasoning "[t]he

exercise of a legal right to terminate an agreement by a contracting party can not be the subject

of an action against a third party for procuring such alleged breach... [a]t best, plaintiff's rights

in the agreements in question were enforceable merely at the will of the infant and no action can

arise for inducing the legal termination thereof." *Id.* at 527, 221 N.Y.S.2d at 895-96. In *E.R.*

*Squibb & Sons v. Ira J. Shapiro, Inc.*, 64 N.Y.S.2d 368 (Sup. Ct. 1945), the court dismissed a

claim against impleaded third-party defendants who allegedly induced plaintiff to breach its

contract with defendant:

> the defendants thus did no more than persuade the plaintiff to
> exercise a lawful right; that such persuasion may have caused
> Shapiro a monetary loss gives no right of action, and it is
> immaterial what the motives of defendants were... They did not
> induce plaintiff to breach a contract; all that they did was to
> persuade it to lawfully exercise a legal right of termination.

*Id.* at 369-70. As the foregoing cases make clear, Plaintiff's allegations of monetary loss and

improper motives are irrelevant. Taylor terminated her contract by disaffirming it, as was her

legal right, and neither she nor third parties may be held liable for the exercise of her legal right.

However Plaintiff styles his claims, it does not alter the substance of the rule that a father

cannot be liable for inducing his daughter to disaffirm a contract. The Complaint does not allege

an interference with an prospective economic opportunity that goes beyond an "intentionally

procured Artist's breach of the EPMA" (Compl. ¶ 106). Essentially, the Complaint claims the

prospective economic opportunity harmed was the continuance of the existing contractual

17

relationship.[6] Since Taylor's father cannot be liable for inducing his daughter to disaffirm a management contract as a matter of law and New York public policy, he cannot be liable for tortious interference with prospective economic opportunity based on claims of interference with that same contractual relationship.

Furthermore, the Plaintiff does not allege enough to fulfill the stringent requirements of a tortious interference with *prospective* economic advantage claim. In order to plead such a cause of action, the plaintiff must plead (1) the plaintiff had a business relationship with a third party; (2) defendant knew of such relationship and intentionally interfered with it; (3) defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) defendant's actions injured the relationship between plaintiff and third party. *Henneberry v. Sumitomo Corp of America*, No. 04 Civ. 2128, 2007 WL 2068346, at *22 (S.D.N.Y. 2007). Plaintiff's allegations do not satisfy the third element required to plead this cause of action. To meet the third element, the interference must be "'more culpable' that that required where the tortious interference is with a binding contract." *Id.* at *23. "The general rule is that the conduct must amount to a crime or an independent tort, or must be engaged in 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Id.* Plaintiff alleges that "Scott Swift designated himself Artist's manager after the EPMA was disaffirmed" and used information provided by Plaintiff "to defendants' economic advantage" (Compl. ¶ 57), so Plaintiff fails to allege that Scott Swift acted "solely out of malice." Plaintiff fails to allege an "illegal or tortious act," since Plaintiff's allegation that

---

[6]     Moreover, a claim for tortious interference with prospective economic advantage must meet requirements "more demanding than those for interference with [the] performance of an existing contract." *Kramer v. Pollock-Krasner Foundation*, 890 F.Supp. 250, 258 (S.D.N.Y. 1995). These more stringent requirements "reflect a policy according greater protection to an interest in an existing contract... than to the less substantive, more speculative interests in a prospective relationship." *International Minerals and Resources, Inc. v. Pappas*, 761 F. Supp. 1068, 1075 (S.D.N.Y. 1991).

"threats ending all economic support of Artist" are illegal (Compl. ¶ 104) is untenable as a matter

of law. Finally, to the extent that Plaintiff's allegations imply fraudulent conduct, they do not

comply with the specificity requirements of Fed. R. Civ. P. 9(b). Plaintiff fails to allege all the

elements of his claim, so his claim must be dismissed.

Plaintiff is attempting to punish Taylor for exercising her right to disaffirm, and

attempting to punish her father for advising her. The actions of Taylor and her father are

protected by New York law, and Plaintiff fails to allege the required elements of his claim, so

Plaintiff's fourth claim for tortious interference with prospective economic opportunity against

Taylor's father must be dismissed.

F.    **Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed**

Plaintiff finally reaches the end of his creativity with his fifth claim, again attempting to

circumvent the well established New York public policy that minors have an absolute right to

disaffirm their contracts. As discussed above in the context of Plaintiff's second claim for

breach of contract, under *Metropolitan Model* any parental guarantee used to circumvent New

York's public policy of protecting minors from their own improvidence is void. *Metropolitan

Model*, 168 Misc.2d 324, 327, 643 N.Y.S.2d 923, 925 (Sup. Ct. N.Y. Co. 1996). To enforce

such a parental guarantee under any legal theory "puts substantial pressure on the parents to urge

their daughter to comply with an agreement she entered into as a minor, even if that agreement is

not otherwise enforceable." *Id.* at 327, 643 N.Y.S.2d at 926. Moreover, also as discussed above,

parental guarantees of unapproved entertainment contracts connected with New York are void

under GEN. OBLIG. LAW § 3-107 -- no parent or guardian shall "be liable on the contract either as

19

a party or as a guarantor of its performance." This New York public policy overrides contractual terms that are actually present, so it certainly overrides any terms Plaintiff hopes to imply.

Furthermore, Plaintiff again cannot meet the pleading requirement for his claim. In order to plead breach of an implied covenant of good faith and fair dealing, a Plaintiff must demonstrate the existence of a valid contract from which such a duty would arise.[7] *Schorr v. Guardian Life Ins. Co. of America*, 44 A.D.3d 319, 319, 843 N.Y.S.2d 24, 25 (1st Dep't 2007). A cause of action for breach of an implied duty of good faith and fair dealing must be dismissed where the claim is based on an unenforceable contract between the parties. *Gotham Boxing Inc. v. Finkel*, Nos. 601479-07, 2008 WL 104155, at *7 (Sup. Ct. 2008) (claim for breach of implied covenant of good faith and fair dealing is dismissed because underlying contract was not approved by the New York State Athletic Commission as required by law); *American-European Art Assoc. v. Trend Galleries, Inc.*, 227 A.D.2d 170, 171, 641 N.Y.S.2d 835, 836 (1st Dep't 1996) (no breach of implied duty of good faith fair dealing because contract did not comply with the Statute of Frauds).

In Plaintiff's last attempt at grabbing for straws, Plaintiff asserts a cause of action against Taylor's parents in connection with an unenforceable guarantee, for allegedly breaching their duty of good faith and fair dealing. Plaintiff, however, cannot meet the pleading requirement for that claim, since the parental guarantees are not enforceable as discussed in this Section and Section C. Thus, Plaintiff's attempt to use these guarantees as the basis for an implied covenant of good faith and fair dealing (Compl. ¶ 112) must fail. Once again, plaintiff cannot use creative pleading to supersede the recognized law and public policy of New York that preserves the right

---

[7]    The EPMA is a valid contract, but was always subject to Taylor's absolute right to terminate it during her infancy. The parental guarantees were never valid contracts as a matter of New York law and public policy.

1780706.3

of a minor to disaffirm her contracts.  Plaintiff's fifth claim for breach of implied covenant of

good faith and fair dealing against Taylor's parents must be dismissed.

### CONCLUSION

For the reasons set forth herein, Plaintiff's Complaint should be dismissed, with

prejudice, against Defendants Taylor Swift, Scott Swift, and Andrea Swift in its entirety together

with such other and further relief that the Court deems just and proper.

DATED:  March 20, 2008
        New York, New York

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Paul V. LiCalsi (PL-6622)
Howard H. Weller (HW-2745)
12 West 49th Street, 30th Fl
New York, NY 10020
(212) 546-7702 (P)
(202) 509-7239 (F)

*Attorneys for Defendants Taylor Swift,
Scott Swift and Andrea Swift*

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL DYMTROW,        )<br>       )<br>             Plaintiff,     )<br>       )<br>       )<br>        v.                    )<br>       )<br>TAYLOR SWIFT, SCOTT SWIFT and    )<br>ANDREA SWIFT,           )<br>       )<br>        Defendants.    ) | Civil Action No. 07 CV 11277 (RJS) |

## CERTIFICATE OF SERVICE

I, Paul V. LiCalsi, hereby certify that on March 20, 2008, a true and correct copy of:

- NOTICE OF MOTION TO DISMISS THE COMPLAINT

- MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

- TRANSMITTAL DECLARATION OF PAUL V. LiCALSI IN SUPPORT OF DEFENDANTS TAYLOR SWIFT, SCOTT SWIFT AND ANDREA SWIFT'S MOTION TO DISMISS THE COMPLAINT

was electronically served upon counsel of record via the Court's Electronic Filing System

in accordance with the Federal Rules of Civil Procedure and Local Civil Rule 5.2.

DATED:  March 20, 2008
          New York, New York

                      MITCHELL SILBERBERG & KNUPP LLP

              By: _____

                    Paul V. LiCalsi (PL-6622)
                    12 West 49th Street, 30th Fl
                    New York, NY 10020
                    (212) 546-7702 (T)
                    (202) 509-7239 (F)
                    *Attorneys for Defendants Taylor Swift,*
                    *Scott Swift and Andrea Swift*