MITCHELL SILBERBERG & KNUPP LLP
Paul V. LiCalsi (PL-6622)
Howard H. Weller (HW-2745)
12 West 49th Street
New York, N.Y. 10020
(212) 509-3900

*Attorneys for Defendants Taylor Swift, Scott Swift
and Andrea Swift*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DANIEL DYMTROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07 CV 11277 (RJS) |
| v. | ) | |
| | ) | |
| TAYLOR SWIFT, SCOTT SWIFT and | ) | |
| ANDREA SWIFT, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS TAYLOR SWIFT, SCOTT SWIFT AND ANDREA SWIFT'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

1780706.4

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ...................................................................................................... 3

I.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE
     TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL
     PROCEDURE 12(b)(6) .............................................................................. 3

     A.   Standard for 12(b)(6) Dismissal ..................................................... 3

     B.   Plaintiff's Claim for Unjust Enrichment and Other Quasi-Contract
          Theories Must Be Dismissed ........................................................... 4

     C.   Plaintiff's Claim for Breach of Contract Against Taylor's Parents
          Must Be Dismissed ........................................................................... 9

     D.   Plaintiff's Claim for Promissory Estoppel and Estoppel in Pais
          Must Be Dismissed ........................................................................ 14

          1.   Promissory Estoppel ............................................................. 14

          2.   Estoppel in Pais ..................................................................... 16

     E.   Plaintiff's Claim for Tortious Interference with Prospective
          Economic Opportunity Must Be Dismissed ................................. 17

     F.   Plaintiff's Claim for Breach of Implied Covenant of Good Faith
          and Fair Dealing Must Be Dismissed ........................................... 21

CONCLUSION ................................................................................................. 23

1780706.4

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American-European Art Assoc. v. Trend Galleries, Inc.*,
227 A.D.2d 170, 641 N.Y.S.2d 835 (1st Dep't 1996) ............................................................. 22

*Baksi v. Wallman*,
62 N.Y.S.2d 26 (Sup. Ct. NY Co. 1946) .................................................................. 12

*Bright Tunes Productions, Inc. v. Lee*,
43 Misc. 2d 21, 249 N.Y.S.2d 632 (Sup. Ct. 1964) .................................................. 8

*Carell v. The Shubert Organization, Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ....................................................................... 3

*Carmine v. Murphy*,
285 N.Y. 413, 35 N.E.2d 19, (N.Y. Ct. App. 1941) ................................................ 12

*Cohen v. Brunswick Record Corp.*,
31 Misc. 2d 525, 221 N.Y.S.2d 893 (Sup. Ct. 1961) ................................... 6, 15, 16, 17

*Deutsch v. Kroll Associates, Inc.*,
No. 02 Civ. 2892, 2003 U.S. Dist. LEXIS 16613 (S.D.N.Y. 2003) .......................... 13

*E.R. Squibb & Sons v. Ira J. Shapiro, Inc.*,
64 N.Y.S.2d 368 (Sup. Ct. 1945) ............................................................................. 18

*Everfresh Beverages, Inc. v. Charterhouse Group International, Inc. et al.*,
238 B.R. 558 (S.D.N.Y. 1999) ................................................................................... 4

*Gotham Boxing Inc. v. Finkel*,
Nos. 601479-07, 2008 ............................................................................................. 22

*Graff v. Enodis Corp.*,
2003 WL 1702026 (S.D.N.Y. 2003) ..................................................................... 5, 13

*Hantash v. V Model Management New York, Inc.*,
2007 WL 2324326 (S.D.N.Y. 2007) .......................................................................... 6

*Henneberry v. Sumitomo Corp of America*,
No. 04 Civ. 2128, 2007 WL 2068346 (S.D.N.Y. 2007) ........................................... 18

*Imtrac Industries, Inc. v. Glassexport Co., Ltd.*,
1996 WL 39294 at *10 (S.D.N.Y. 1996) .................................................................. 20

*International Minerals and Resources, Inc. v. Pappas*,
761 F. Supp. 1068 (S.D.N.Y. 1991) ......................................................................... 19

*Kramer v. Pollock-Krasner Foundation*,
890 F.Supp. 250 (S.D.N.Y. 1995) ........................................................................... 19

*Lee v. Silver*,
262 A.D. 149, 28 N.Y.S.2d 333 (1st Dep't 1941) ............................................. passim

ii

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Leeds v. Meltz,*
  85 F.3d 51 (2d Cir. 1996) ...................................................................................4

*Metropolitan Model Agency USA, Inc. v. Rayder,*
  168 Misc. 2d. 324, 643 N.Y.S.2d 923 (Sup. Ct. NY Co. 1996) ..........................passim

*Primo Construction, Inc. v. Stahl,*
  161 A.D.2d 516, 555 N.Y.S.2d 785 (1st Dep't 1990) ...................................... 12

*Prinze v. Jonas,*
  38 N.Y.2d 570, 345 N.E.2d 295, 381 N.Y.S.2d 824 (1976) ................................8

*Production Products Co. v. Vision Corp.,*
  270 A.D.2d 922, 706 N.Y.S.2d 289 (4th Dep't 2000) ........................................5

*Readco, Inc. v. Marine Midland Bank,*
  81 F.3d 295 (2d Cir. 1996) ................................................................................ 16

*Reiter Sales, Inc. v. Scovill Fasteners, Inc.,*
  9 Misc. 3d 1109A, 806 N.Y.S.2d 448 (Sup. Ct. 2005)................................ 14, 16

*Ripple's of Clearview, Inc. v. Le Havre Associates,*
  88 A.D.2d 120, 452 N.Y.S.2d 447 (2d Dep't 1982).......................................... 14

*Royal Society of Medicine v. International Society For Preventive Oncology, Inc.,*
  602 F. Supp. 794 (S.D.N.Y. 1985) .................................................................... 20

*Schorr v. Guardian Life Ins. Co. of America,*
  44 A.D.3d 319, 843 N.Y.S.2d 24 (1st Dep't 2007)........................................... 22

*Scott Eden Management v. Kavovit,*
  149 Misc.2d 262, 563 N.Y.S.2d 1001 (Sup. Ct. Westchester Co. 1990) ................. 8, 9

*Shapira v. Charles Schwab & Co., Inc.,*
  225 F. Supp.2d 414 (S.D.N.Y. 2002) ............................................................... 15

*Soumayah v. Minnelli,*
  41 A.D.3d 390, 839 N.Y.S.2d 79 (1st Dep't 2007)............................................5

*Spadafor v. Reale,*
  2001 WL 1020359 (S.D.N.Y. Sept. 5, 2001) ......................................................4

*Swits v. New York Systems Exchange Inc.,*
  281 A.D.2d 833, 722 N.Y.S.2d 300 (3d Dep't 2001).......................................4, 5

*Troni v. Banca Popolare Di Milano,*
  1990 WL 165684 (S.D.N.Y. Oct. 26, 1990).........................................................3

*Walters v. Fullwood,*
  675 F. Supp. 155 (S.D.N.Y. 1987) ................................................................... 11

1780706.4

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Walther v. Bank of New York,*
  772 F. Supp. 754 (S.D.N.Y. 1991) ................................................................................ 20

### Statutes and Rules

ARTS & CULT. AFF. LAW § 35.03(1) ................................................................................ 10
ARTS & CULT. AFF. LAW § 35.03(2)(d) ............................................................................ 7
ARTS & CULT. AFF. LAW § 35.03(5)(k) ............................................................................ 7
ARTS & CULT. AFF  LAW § 35.03 ............................................................................ 7, 12
ARTS & CULT. AFF. LAW § 35.05 .................................................................................. 11

New York Civil Practice Laws & Rules § 105 .................................................................. 6

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1, 3
Federal Rules of Civil Procedure 9(b) ............................................................................ 19

GEN. OBLIG. LAW § 3-101 ............................................................................................... 8
GEN. OBLIG. LAW § 3-107 ........................................................................................ passim
GEN. OBLIG. LAW § 3-105 ............................................................................................... 12

N.Y. Jur. Estoppel § 3 ..................................................................................................... 14

### Other Authorities

2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[1][b] (3d ed. 2002) ....................... 4

This memorandum of law is respectfully submitted on behalf of Defendants Taylor Swift, Scott Swift and Andrea Swift ("Defendants") in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint of Plaintiff Daniel Dymtrow, dated December 14, 2007, in its entirety, for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

When she was fourteen years old, singer and songwriter Taylor Swift ("Taylor") signed a management contract with Plaintiff. When she was fifteen years old, Taylor disaffirmed that contract, as was her legal right. Taylor and her parents terminated their relationship with Plaintiff because, among other things, he displayed an astounding lack of understanding of the country music industry, he alienated the very people that Taylor needed to further her career, he rarely visited Nashville, he had no business plan, and he managed to obtain only one deal – a photo shoot worth $10,000 – during the time he managed Taylor. In addition, Plaintiff gossiped behind the backs of his other clients and Defendants did not want a manager who might similarly betray their confidences.

Now, nearly three years after Taylor disaffirmed the contract and in light of Taylor's recent success and critical acclaim, Plaintiff suddenly brings the instant action in an effort to grab income that he never earned and improperly extract monies from Taylor and her parents, Scott and Andrea Swift. In an effort to circumvent the well settled principles of New York law that give a minor the absolute right to disaffirm a contract, Plaintiff asserts five causes of action that are devoid of any colorable legal basis. New York has constructed an elaborate statutory structure to protect minors from improvident contract decisions in part by providing a procedure whereby a minor's right to disaffirm may be limited *only* if the contract is submitted for judicial

1

1780706.4

scrutiny and approval.  Plaintiff failed to follow this procedure, and now attempts an end run around clear New York law with imaginative and fatally deficient claims.

Thus, Plaintiff's allegations, even if taken as true, cannot support his claims for (1) unjust enrichment and other quasi-contract theories, (2) breach of contract, (3) promissory estoppel and estoppel in pais, (4) tortious interference with prospective economic opportunity, and (5) breach of implied covenant of good faith and fair dealing.  As all of these claims are legally deficient against each Defendant against whom they are alleged, and for the reasons stated herein, Defendants request that this Court dismiss the Complaint in its entirety against each of them.

## STATEMENT OF FACTS

For the purposes of this motion only, Defendants assume the truth of the facts alleged in the Complaint.  The Complaint alleges that Plaintiff is a music industry personal manager (Compl. ¶ 9) who entered into an exclusive personal management agreement with Taylor (the "EPMA") (Compl. ¶ 2).  Taylor was thirteen years old when Plaintiff agreed to manage her. (Compl. ¶ 1).  The EPMA was signed on or about April 5, 2004, and made effective as of March 25, 2003 (Compl. ¶ 17).  The EPMA, which is attached to the Complaint as Exhibit A[1] states, "[t]his agreement has been entered into in the State of New York, and the validity, interpretation, and legal affect [sic] of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York." (Compl. Ex. A, p. 5).  Taylor's parents signed papers purporting to guarantee the performance by Taylor of all of her obligations and services detailed in the EPMA.  (Compl. ¶ 19).

---

[1] Plaintiff's Complaint is attached to the affidavit of Howard H. Weller, dated April 15, 2008, which affidavit accompanies the moving papers.

2

Plaintiff alleges that on or about March 7, 2005, Plaintiff began negotiating the terms of a record contract on behalf of Taylor with a newly formed record label. (Compl. ¶ 35). Plaintiff claims he "pursued talent agency opportunities" for Taylor "before the EPMA was disaffirmed." (Compl. ¶ 40). On or about August 1, 2005, Taylor, through her lawyer, sent a letter "purporting to disaffirm the EPMA." (Compl. ¶ 37). Plaintiff then alleges that Taylor's father induced his daughter to disaffirm the EPMA. (Compl. ¶ 51).

Plaintiff appears to concede that Taylor had the right to disaffirm the EPMA. (Compl. ¶ 78). Plaintiff also concedes he did not apply to the court for approval. (Compl. ¶ 22). Accordingly, given Taylor's absolute right to disaffirm an agreement she made as a minor, and the lack of any legally relevant allegations that could overcome this absolute right, the Complaint, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### A. Standard for 12(b)(6) Dismissal

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Carell v. The Shubert Organization, Inc.*, 104 F. Supp. 2d 236, 246 (S.D.N.Y. 2000). While a court must accept the factual allegations of the complaint as true, it is "by no means under a concomitant obligation to accept unsupported inferences or 'sweeping legal conclusions cast in the form of factual allegations.'" *Troni v. Banca Popolare Di Milano*, 1990 WL 165684, at *2 (S.D.N.Y. Oct. 26, 1990) (citations

3

1780706.4

omitted). "'[L]iberal construction of pleadings should not be permitted to override completely the rights of defendants.'" *Id.* (citations omitted); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (granting 12(b)(6) motion stating that "bald assertions and conclusions of law will not suffice"); *Everfresh Beverages, Inc. v. Charterhouse Group International, Inc. et al.*, 238 B.R. 558, 571 (S.D.N.Y. 1999) (noting the that the pleading standard is a liberal one but warning that "even liberal construction has its limits").

Thus, a pleading "must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief" can be found. 2 James Wm. Moore *et al., Moore's Federal Practice* ¶ 12.34[1][b] (3d ed. 2002). Moreover, it is the legal sufficiency of the complaint, "not the weight of any evidence offered in support of the action" that is to be assessed. *Spadafor v. Reale*, 2001 WL 1020359, at *1 (S.D.N.Y. Sept. 5, 2001).

**B.     Plaintiff's Claim for Unjust Enrichment and Other Quasi-Contract Theories Must Be Dismissed**

Plaintiff pleads unjust enrichment and other quasi-contract theories in an attempt to override Taylor's absolute right to disaffirm a contract.[2] To state a claim for unjust enrichment, Plaintiff must allege that Defendants were enriched at his expense and that it is against equity and good conscience to permit them to retain such enrichment. *Swits v. New York Systems Exchange Inc.*, 281 A.D.2d 833, 835, 722 N.Y.S.2d 300, 302 (3d Dep't 2001). To state a claim for quantum meruit, another quasi-contract theory, Plaintiff must plead (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are

---

[2]  Plaintiff shoehorns multiple and undefined causes of action into his purported "first cause of action," creating the unworkable task of determining which allegations Plaintiff intends to support which causes of action.

rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. *Soumayah v. Minnelli*, 41 A.D.3d 390, 391, 839 N.Y.S.2d 79, 81 (1st Dep't 2007). A claim for unjust enrichment, or any other quasi-contract theory, however, cannot lie when there exists – as here – a valid written contract. *Graff v. Enodis Corp.*, 2003 WL 1702026 at *2 (S.D.N.Y. 2003); *Swits*, 281 A.D.2d at 836, 722 N.Y.S.2d at 302; *see also Production Products Co. v. Vision Corp.*, 270 A.D.2d 922, 923, 706 N.Y.S.2d 289, 291 (4th Dep't 2000) (no recovery under quasi-contract theory because of written agreement, where agreement was lawfully terminated).

     *Swits, supra,* is instructive. In that case, the defendant engaged the plaintiff as a sales representative and paid the plaintiff commissions in accordance with a written agreement. 281 A.D.2d at 834, 722 N.Y.S.2d at 301. After the defendant terminated its affiliation with the plaintiff, the plaintiff claimed, among other things, nonpayment of commissions on leases which the plaintiff had originated prior to termination but which were renewed or extended post-termination. *Id.* The court dismissed plaintiff's claim for unjust enrichment because "the existence of a valid written contract precludes recovery on a quasi-contract theory." *Id.* at 836, 722 N.Y.S.2d at 302. *See also Graff, supra,* 2003 WL 1702026 at *2 (where contract exists that governs the subject matter of the action, plaintiff cannot recover in quasi contract).

     Similarly here, Taylor entered into a valid written agreement with Plaintiff to help market her services and Taylor terminated that agreement by disaffirming it, as was her right under the laws of New York. Moreover, that agreement governs the subject matter of this action yet the Complaint is utterly devoid of any allegation that a specific contractual provision has been breached by Taylor in any way. Accordingly, Plaintiff's claim for unjust enrichment and other

5

quasi contract theories must be dismissed because of the existence of the valid written agreement.

Plaintiff's unjust enrichment and other quasi contract claims also contravene New York's public policy of protecting the rights of an infant to disaffirm contracts made during infancy.[3] New York has a public policy of protecting infants from their own improvidence. *Metropolitan Model Agency USA, Inc. v. Rayder*, 168 Misc. 2d. 324, 327, 643 N.Y.S.2d 923, 925 (Sup. Ct. NY Co. 1996). Infants have an "absolute right" to disaffirm agreements on the ground of infancy. *Hantash v. V Model Management New York, Inc.*, 2007 WL 2324326 at *1 (S.D.N.Y. 2007); *Cohen v. Brunswick Record Corp.*, 31 Misc. 2d 525, 527, 221 N.Y.S.2d 893, 895 (Sup. Ct. NY Co. 1961). New York's public policy of protecting minors is strong, as evidenced by the courts' decisions in *Metropolitan Model, supra,* and *Lee v. Silver*, 262 A.D. 149, 28 N.Y.S.2d 333 (1st Dep't 1941). In *Metropolitan Model,* the contract at issue called for the application of Florida law but the court noted that New York courts "will not apply the law of a sister State when to do so would violate our public policy." *Metropolitan Model*, 168 Misc. 2d. at 327, 643 N.Y.S.2d at 926. In so holding, the *Metropolitan Model* court applied New York law instead of Florida law in order to void a parental guarantee of an infant's modeling contract on the ground of New York public policy. In *Lee v. Silver*, the court dismissed a tortious interference claim against a parent for advising her child to disaffirm a contract on the ground of New York public policy and held that public policy dictates that the court should not subject the parent to "any inquiry as to motive" when the issue concerns advice regarding the minor's right to disaffirm a contract. 262 A.D. at 151, 28 N.Y.S.2d at 336.

---

[3] An infant is "a person who has not attained the age of eighteen years." CPLR § 105. As used in this memorandum, the words "infant" and "minor" are interchangeable.

New York's policy of protecting infants from their own improvidence finds further expression through the statutory process required to remove the right of an infant to disaffirm a contract. New York Arts and Cultural Affairs Law § 35.03 provides a method for securing court approval of an entertainment contract with a minor which removes the minor's right to disaffirm. That process requires a showing "that the contract is reasonable and provident and for the best interests of the infant." Arts & Cultural Affairs Law § 35.03(5)(k). Moreover, § 35.03 also provides that no contract shall be approved if the term of the contract binds the infant for more than three years absent representation by experienced entertainment counsel, in which case the period id is extended to seven years. Arts & Cultural Affairs Law § 35.03(2)(d). In addition, if the minor's contract contains any covenant or condition that extends beyond those time frames, it may be approved only if the covenant or condition is found to be reasonable by the court. *Id.* New York further protects the ability of an infant to disaffirm an entertainment contract not approved by the court by voiding a parental guarantee of such a contract, where the infant or performance is connected to New York. *See* New York General Obligations Law § 3-107.

Here, Plaintiff chose to avoid scrutiny of the EPMA and never attempted to obtain court approval of his contract with Taylor pursuant to New York's Arts & Cultural Affairs Law § 35.03. Accordingly, Taylor retained the absolute right to disaffirm the contract made during her infancy. Allowing Plaintiff's claim for unjust enrichment based on Taylor's exercise of her absolute right to disaffirm would override this deep-rooted New York public policy. Furthermore, the EPMA could not have been judicially approved, since it extends for an indeterminate duration.[4]    This unknowably long time period covered by the EPMA indicates the

---

[4] The Complaint admits that the agreement with Taylor would only come to an end "upon the expiration of the 'Second Album Cycle'" (*see* Complaint, Exhibit A at 1) and that Plaintiff's

(...continued)

1780706.4

contract was never in the best interests of Taylor. *See Bright Tunes Productions, Inc. v. Lee*, 43 Misc. 2d 21, 23-24, 249 N.Y.S.2d 632, 634-35 (Sup. Ct. 1964) (legislature has indicated that contracts in excess of three years are not reasonable and provident by making such contracts ineligible for judicial approval); *Prinze v. Jonas*, 38 N.Y.2d 570, 576, 345 N.E.2d 295, 299, 381 N.Y.S.2d 824, 829 (1976) (In the context of GEN. OBLIG. LAW § 3-101, "duration, together with the other provisions, is relevant in determining the reasonableness of the contract").

Indeed, New York's public policy of protecting infants from their improvident contracts is designed to allow the disaffirmance *of this very type of contract* – an overreaching contract of indeterminate duration that binds an infant to a man who wants to take as much of her earnings as he can get for himself. Plaintiff's claim for unjust enrichment is thus a blatant attempt to render Taylor's right to disaffirm a nullity. Plaintiff's claim for unjust enrichment and other quasi-contract theories must be dismissed because Plaintiff cannot meet the legal standard for unjust enrichment or other quasi-contract theories, and because he cannot be allowed to circumvent the clear public policy of New York.

Plaintiff has suggested, however, that his unjust enrichment and quasi-contractual claims should be sustained in light of the Supreme Court Westchester County decision in *Scott Eden Management v. Kavovit*, 149 Misc.2d 262, 563 N.Y.S.2d 1001 (Sup. Ct. Westchester Co. 1990). First, the *Scott Eden* case does not abrogate well-settled law that claims for unjust enrichment or any other quasi-contract theory cannot lie where – as here – there exists a valid written contract. Moreover, the facts at issue in *Scott Eden* are easily distinguished. In that case, a minor signed

---

(...continued)
"participation in Artist's Gross Income earned . . . . shall continue for a period of four (4) years following the expiration" of the contract. *See* Complaint, Exhibit A at 2.

8

several contracts for his acting services while he was under management with the plaintiff. For several years, the minor paid to the plaintiff commissions earned from his acting services under those contracts. Upon disaffirming the contract, the minor stopped the flow of commissions to the plaintiff and the plaintiff sued for those specific commissions. Under those circumstances, the court held that despite being able to disaffirm, the defendant was obligated to continue to pay plaintiff his commissions pursuant to the contract. 149 Misc. 2d at 267, 563 N.Y.S. 2d at 1004.

Here, by contrast, Plaintiff was responsible for securing one income generating opportunity for Taylor (based upon her suggestion) during his tenure as manager – the Abercrombie & Fitch advertising campaign that Plaintiff references at paragraphs 23 and 27 of the Complaint. For her services in connection with that contract, Taylor received $10,000 and Defendants paid Plaintiff his full commission on that compensation immediately. Nowhere does Plaintiff here, unlike in *Scott Eden*, claim that Taylor breached her contractual obligations pursuant to the EPMA by withholding specific commissions earned on the Abercrombie deal, or on any other deal secured during Plaintiff's tenure as Taylor's manager. Rather, Plaintiff merely alleges, in conclusory fashion, that he is entitled to recover under a theory of "quantum merit" for the "reasonable value of his services" based upon "oral and written agreements." *See* Complaint at ¶¶ 78-79. Given the existence of a contract that governs the subject matter of this action, however, Plaintiff's allegations regarding "reasonable value," "oral" agreements and "quantum merit" recovery are without basis.

### C.  Plaintiff's Claim for Breach of Contract Against Taylor's Parents Must Be Dismissed

In an end-around Taylor's absolute right to disaffirm the contract, Plaintiff tries to hold Taylor's parents to a guarantee of Taylor's performance. The court must dismiss Plaintiff's

9

claim for breach of contract against Taylor's parents, however, because New York has a well
established public policy of protecting the absolute right of infants to disaffirm their contracts.
*See* Section B, *supra*.  Significantly, New York has given teeth to its policy by voiding parental
guarantees of infant's contracts.  *Metropolitan Model Agency, supra*, 168 Misc. 2d. 324, 327,
643 N.Y.S. 2d 923, 925-26; New York General Obligations Law §3-107 (parental guarantees of
minor's unapproved entertainment contracts connected with New York are void).

     *Metropolitan Model* is directly on point.  In that case, Francesca, a minor, contracted with
a model agency to be her exclusive personal manager and Francesca's parents signed a separate
guarantee stating that they "*unconditionally guarantee* the full and timely discharge of all of
[Francesca's] obligations" and that "in the event our minor child disavows her agreement with
you or fails to perform as agreed, we shall be liable to you for money damages . . . ."
*Metropolitan Model*, 168 Misc. 2d at 325, 643 N.Y.S.2d at 924-25 (emphasis in original).
Francesca did not re-execute the agreement upon reaching the age of majority as she was
obligated to do pursuant to her contract and instead engaged another model agency to replace the
plaintiff.  168 Misc. 2d at 326, 643 N.Y.S.2d at 925.

     Just as Plaintiff has done here, the Plaintiff in *Metropolitan Model* sued Francesca's
parents for breach of their "unconditional" guarantee.  The court, however, held that the
guarantee was void and found it to be an unlawful effort to circumvent New York's public policy
of protecting minors from their own improvident contracts.  168 Misc. 2d at 327, 643 N.Y.S.2d
at 925-26.  Moreover, despite the fact that the guarantee called for the application of Florida law,
the court applied New York law given the importance of the policy at stake.  Specifically, the
court held:

1780706.4

> New York has had a public policy of protecting minors from their own improvidence. To this end, the State has enacted numerous statutes to ensure that minors will not be exploited by adults.
>
> In view of this public policy, the court also finds the guarantee between Metropolitan and the parents is void since the guarantee was an attempt to circumvent the requirements of Arts and Cultrual Affairs Law § 35.05 . . . . .[I]t also effectively puts substantial pressure on the parents to urge their daughter to comply with an agreement she entered into as a minor, even if that agreement is not otherwise enforceable. The court will not permit plaintiffs to collect damages under the guarantee since to do so would effectively avoid the State's public policy of protecting minors. Although New York courts would ordinarily apply the law of a sister state as provided for in the contract and give full faith and credit to such law, New York courts will not apply the law of a sister state when to do so would violate our public policy.

168 Misc. 2d at 327, 643 N.Y.S.2d at 925-26.

The similarities of *Metropolitan Model* to the case at hand are striking. In both cases, a minor entered into a contract with a manager and later chose to terminate the relationship and in each case the parents guaranteed the performance of the contractual obligations of their daughters. Like the plaintiff in *Metropolitan Model*, Plaintiff here is trying to use hold Taylor's parents to their guarantee in a blatant attempt to circumvent Taylor's absolute right to disaffirm her contract. Yet to hold parents liable on a guarantee of an unapproved contract involving a minor, is to force Taylor's parents to "urge their daughter to comply with an agreement" that she otherwise has the absolute right to disaffirm. *Metropolitan Model*, 168 Misc. 2d at 327, 643

11

1780706.4

N.Y.S.2d at 926.[5]  To do so would be akin to enforcing a guarantee of an unenforceable obligation.[6]

Significantly, New York General Obligations Law § 3-107 explicitly voids parental guarantees of unapproved entertainment contracts with minors connected to New York.  The purported guarantees of Taylor's parents are voided by the letter and intent of § 3-107 which states that unless the contract with the minor is approved by the court, no parent of the infant making such a contract shall be liable on the contract "either as a party or as a guarantor" if (1) the infant disaffirms the contract and was a resident of New York at the time the contract was made, or (2) the infant refuses to perform services "required or permitted by the contract to be performed or rendered" in New York, or the parent refuses "to cause such services to be rendered or performed."[7]

---

[5]  Moreover, to bind Taylor's parents to the guarantee would contravene the overriding public policy in New York as articulated by the First Department in *Lee v. Silver*, *supra*, that "parents should have the right to advise their infant children with regard to all matters." 262 A.D. at 151, 28 N.Y.S.2d at 336.

[6]  There exists well-established law in New York that a contract will not be enforced when to do so would violate state statutes. *See, e.g., Walters v. Fullwood*, 675 F. Supp. 155 (S.D.N.Y. 1987) (contract was void where it was executed in violation of rules of athletic association); *Carmine v. Murphy*, 285 N.Y. 413, 35 N.E.2d 19, (1941) (contract to sell liquor void where seller did not comply with license requirements to sell alcohol); *Primo Construction, Inc. v. Stahl*, 161 A.D.2d 516, 555 N.Y.S.2d 785 (1st Dep't 1990) (construction contract void where contractor failed to obtain proper license required by law); *Baksi v. Wallman*, 62 N.Y.S.2d 26 (Sup. Ct. NY Co. 1946) (contract between boxer and manager was void since it violated state statutes and boxing rules).

[7]  General Obligations Law § 3-107 applies to contracts covered by General Obligations Law § 3-105, which has been replaced by New York Arts and Cultural Affairs Law § 35.03.

12

The EPMA is a § 35.03 Contract because Plaintiff agreed to render services to Taylor, then an infant (Compl., Exhibit A, p. 6), as her "exclusive personal manager in the 'Entertainment Industry.'" (Compl., Exhibit A, p. 1). The EPMA was never approved by a court (Compl. ¶ 22). When Taylor disaffirmed the contract, she was refusing to "promptly advise Manager of all viable offers of employment" (Compl., Exhibit A, p. 1), who was located in New York (Compl. ¶ 5). Taylor was also refusing to perform "services detailed in the EPMA" (Compl. ¶ 19) or "services under the EPMA" (Compl. ¶ 84). Since all conditions of General Obligations Law § 3-107 are satisfied, Taylor's parents cannot be liable for any purported "guarantee" they may have signed to the EPMA.

Furthermore, Taylor is so connected to New York that the New York public policy protecting the absolute right of infants to disaffirm their contracts, including General Obligations Law § 3-107, obviously is intended to protect Taylor. Plaintiff alleges that he and the Defendants met in New York to discuss the basic terms and parameters of the EPMA. (Compl. ¶ 15). Plaintiff claims to be a resident of New York City at the time he entered into agreements with Defendants. (Compl. ¶ 5). The EPMA, by its own terms, "has been entered into in the State of New York, and the validity, interpretation and legal affect [sic] of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York." (Compl. Ex. A, p. 5). Clearly, New York has a substantial interest and connection to this contract and the performance thereof. Thus, by reason of General Obligations Law § 3-107 and New York public policy, any guarantee by Taylor's parents is void, and Plaintiff's second cause of action for breach of contract against Taylor's parents must be dismissed.

13

**D.    Plaintiff's Claim for Promissory Estoppel and Estoppel in Pais Must Be Dismissed**

Plaintiff's claim for promissory estoppel and estoppel in pais against Taylor's parents continues the series of Plaintiff's "everything including the kitchen sink" claims designed to circumvent the established public policy of New York to protect a minor's absolute right to disaffirm her contract.[8]

**1.    Promissory Estoppel**

To establish a claim for promissory estoppel, a plaintiff must show: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." *Ripple's of Clearview, Inc. v. Le Havre Associates*, 88 A.D.2d 120, 122, 452 N.Y.S.2d 447, 449 (2d Dep't 1982). In order to recover on a claim for promissory estoppel, the Plaintiff must establish a substantial change in position resulting in an unconscionable injury. *Reiter Sales, Inc. v. Scovill Fasteners, Inc.*, 9 Misc. 3d 1109A, 806 N.Y.S.2d 448, 2005 WL 2242846 at *5 (Sup. Ct. Nassau Co., 2005). Plaintiff can do neither.

The crux of Plaintiff's allegations are that Taylor's parents made two basic promises: (1) "to guarantee that Artist would perform as expected," and (2) never "to encourage and/or suggest to Artist that she should disaffirm the EPMA." (Compl. ¶¶ 94, 96). The New York public policy of preserving the ability of infants to disaffirm improvident contracts, as discussed throughout this memorandum of law, prevents the use of a promissory estoppel claim to

---

[8]   Plaintiff's purported "third claim" actually names two distinct causes of action: one for promissory estoppel and one for estoppel in pais. The squeezing of two separate claims into the same set of paragraphs results in an incomprehensible ambiguity as to what allegations are intended to support what claims.

1780706.4

circumvent that policy. The first alleged promise is voided by New York law and public policy, as discussed in more detail above in Section C. *See Metropolitan Model, supra,* 168 Misc. 2d 324, 327, 643 N.Y.S.2d 923, 925 (parental guarantee is void where it is an attempt to circumvent statute protecting minors in the modeling industry); see also General Obligations Law § 3-107. The second alleged promise is voided by New York law and public policy, as discussed in more detail below in Section E. *See Lee v. Silver,* 207 A.D.2d 955, 28 N.Y.S.2d 333 (1st Dep't 1941) (parent cannot be held liable for advising her child to disaffirm her contract); *Cohen v. Brunswick Record Corp.,* 31 Misc. 2d 525, 527, 221 N.Y.S.2d 893, 896 (Sup. Ct. N.Y. Co. 1961) ("plaintiff's rights in the agreements in question were enforceable merely at the will of the infant and no action can arise for inducing the legal termination thereof"). As both alleged promises on which Plaintiff rests his claim for promissory estoppel violate clearly established New York public policy, Plaintiff cannot sustain a claim for promissory estoppel.

Moreover, New York law does not recognize promissory estoppel in the employment context. *See Shapira v. Charles Schwab & Co., Inc.,* 225 F. Supp.2d 414, 419 (S.D.N.Y. 2002). Plaintiff alleges an employment context, a "professional relationship" between Plaintiff and Taylor whereby Plaintiff would "perform managerial services for Artist and Parents in exchange for compensation" (Compl. ¶ 73). The EPMA states that "Manager shall be Artist's exclusive personal manager" (Compl. Ex. A, p. 1). Plaintiff's claims demonstrate an employment context and employment relationship, and accordingly, Plaintiff cannot claim promissory estoppel as a matter of New York law.

Furthermore, even if a claim for promissory estoppel were recognized in this context (and it is not) Plaintiff does not allege an unconscionable injury or a substantial change in his position. The only detriments alleged are the "efforts" Plaintiff expended on behalf of Taylor (Compl. ¶

15

98), which are "efforts" that were presumably performed pursuant to Plaintiff's obligations under the EPMA and for which Plaintiff has already received commissions. Receiving bargained for compensation is not unconscionable, nor is losing expected future income due to the discontinuance of the EPMA pursuant to Taylor's legal right. *See Reiter Sales*, supra, 2005 WL 2242846 at *5 (loss of business and income from a contract's termination does not establish substantial change in position or unconscionable injury; plaintiff should not have had any expectation that defendants would remain his customers in perpetuity).

### 2.    Estoppel in Pais

"Estoppel in pais" is an alternate name for "equitable estoppel." N.Y. Jur. Estoppel § 3. Under any name, this claim is another attempt to circumvent the established public policy of protecting the absolute right of minors to disaffirm their contracts. To assert a claim for equitable estoppel under New York law, the party asserting estoppel must show that the party alleged to be estopped "(1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct would be acted upon by the other party; and (3) knew the real facts." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) (*brackets omitted*). "In addition, the party alleging estoppel must also show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Id.* at 301-02.

This claim is fatally deficient as Plaintiff fails to adequately allege these elements. Plaintiff never alleges what *material facts* might be falsely represented or concealed. Plaintiff attempts to allege promises on behalf of Taylor's parents, but does not plead any *material facts* that were falsely represented or concealed. Nowhere in the complaint is there an allegation that

16

Taylor's parents *intended* that any false representation or concealment would be acted upon. Plaintiff never alleges that Taylor's parents "knew the real facts," in part because he never alleges any *facts* that were misrepresented. Moreover, Plaintiff does not plead lack of knowledge of the "true facts." Plaintiff does not plead reliance on any specific conduct of Taylor's parents related to any false representation or concealment of facts. Finally, Plaintiff does not plead a prejudicial change in his position, since Plaintiff does not allege what he might have done differently had if he had known all the facts.

The crucial material fact in this case is that Taylor was a minor when she signed the EPMA. Plaintiff knew Taylor was a minor, yet chose to contract with her anyway and then avoided the court's scrutiny and approval of the terms of that contract as required under New York law. To allow Plaintiff's claims to proceed any further would flout established New York public policy, as discussed above. Accordingly, Plaintiff's claims for promissory estoppel and estoppel in pais must be dismissed.

### E.    Plaintiff's Claim for Tortious Interference with Prospective Economic Opportunity Must Be Dismissed

Plaintiff's allegation that Taylor's father is liable for inducing his daughter to disaffirm a contract is contrary to explicit New York law. As a matter of New York public policy, a parent of an infant child, even if acting maliciously, may advise the child to disaffirm a contract without incurring liability. *Lee v. Silver*, 262 A.D. 149, 151, 28 N.Y.S.2d 333, 336 (1st Dep't 1941). In *Lee*, the infant vocalist Elsa Harris Silver entered into a contract with two personal managers and later disaffirmed that contract when she was still a minor. 262 A.D. at 150, 28 N.Y.S.2d at 334. Plaintiffs alleged that Elsa's mother "maliciously induced her daughter to repudiate and breach the agreement." 262 A.D. at 151, 28 N.Y.S.2d at 335. However, the First Department held that

17

while a cause of action exists against a person who maliciously procures another to breach a

contract for personal services, parents should have immunity from this rule when advising their

children to disaffirm a contract:

> The wrongful act is malicious when done without legal or social
> justification. I do not believe that the rule should include advice
> given by a parent to an infant child to disaffirm a contract. *Public
> policy dictates that parents should have an absolute right to advise
> their infant children with regard to all matters; that such a right
> should be exercised freely and should not subject the parent to any
> inquiry as to motive.* Such an unrestricted right is one most
> calculated to promote the best interests of the family relationship.

262 A.D. at 151, 28 N.Y.S.2d at 336 (*emphasis added*).

Subsequent law has confirmed a minor's right to disaffirm a contract without creating

liability for the person who urged the minor to do so. In *Cohen v. Brunswick Record Corp.*,

*supra*, the plaintiff alleged that the defendant record company wrongfully induced an infant

singer to disaffirm his agreement with his prior record company in order to record for the

defendant. 31 Misc. 2d at 526, 221 N.Y.S.2d at 895. Noting the "absolute right" to disaffirm the

agreement (31 Misc. 2d at 527, 221 N.Y.S.2d at 895) the court dismissed the claim against the

defendant, reasoning that "[t]he exercise of a legal right to terminate an agreement by a

contracting party can not be the subject of an action against a third party for procuring such

alleged breach. . . . At best, plaintiff's rights in the agreements in question were enforceable

merely at the will of the infant and no action can arise for inducing the legal termination

thereof." 31 Misc. 2d at 527, 221 N.Y.S.2d at 895-96.

18

In *E.R. Squibb & Sons v. Ira J. Shapiro, Inc.*, 64 N.Y.S.2d 368 (Sup. Ct. NY Co., 1945), the court dismissed a claim against defendants who allegedly induced plaintiff to breach its contract with defendant:

> the defendants thus did no more than persuade the plaintiff to exercise a lawful right; that such persuasion may have caused Shapiro a monetary loss gives no right of action, and it is immaterial what the motives of defendants were... They did not induce plaintiff to breach a contract; all that they did was to persuade it to lawfully exercise a legal right of termination.

*Id.* at 369-70.

All of Plaintiff's allegations in this case amount to no more than a charge that Taylor's father induced Taylor to disaffirm the EPMA. (Compl. ¶ 104). However, as the foregoing case law makes clear, Plaintiff's allegations of monetary loss and improper motives are irrelevant. Taylor terminated her contract by disaffirming it, as was her legal right, and her father cannot be liable for advising her to do so, irrespective of his motives. Indeed, Taylor's father was free to urge his daughter to disaffirm her contract, without "any inquiry as to motive." *Lee*, 262 A.D. 151, 28 N.Y.S.2d at 336.

However Plaintiff styles his claims, it does not alter the substance of the rule that a father cannot be liable for inducing his daughter to disaffirm a contract. The Complaint does not allege an interference with any prospective economic opportunity that goes beyond the allegation that Taylor's father "intentionally procured Artist's breach of the EPMA." (Compl. ¶ 106). Essentially, the Complaint claims the prospective economic opportunity harmed was the

19

1780706.4

continuance of the existing contractual relationship.[9] Since Taylor's father cannot be liable for

inducing his daughter to disaffirm a management contract as a matter of law and New York

public policy, he cannot be liable for tortious interference with prospective economic opportunity

based on claims of interference with that same contractual relationship.

Furthermore, a claim for tortious interference with prospective economic opportunity is

actionable only where plaintiff alleges that a contract would have been entered into but for the

defendant's interference. *Imtrac Industries, Inc. v. Glassexport Co., Ltd.*, 1996 WL 39294 at *10

(S.D.N.Y. 1996). In this regard, a plaintiff must proffer specific proof of contracts that would

have been executed but for the interference and in the absence of this evidentiary support, the

claim must fail. *Id.* Here, as in *Imtrac Industries*, Plaintiff's allegations "fail for vagueness" as

he has not alleged any business venture, let alone a specific contract, that was frustrated by

Taylor's father's actions. Plaintiff merely alleges that Taylor's father interfered with his

"business relationships and opportunities related to Artist." (Compl. ¶ 104).

In addition, legitimate self-interest of Taylor's father operates to nullify Plaintiff's

claims. *See Imtrac Industries*, 1996 WL 39294 at *11. As set forth above, Taylor's father

"should have an absolute right to advise" his daughter. *Lee*, 262 A.D. 151, 28 N.Y.S.2d at 336.

Moreover, Plaintiff cannot simply sidestep the proper motive of a father's desire to act in what

he perceives to be his daughter's best interest with conclusory allegations of intentional

---

[9]  Moreover, a claim for tortious interference with prospective economic advantage must meet
requirements "more demanding than those for interference with [the] performance of an existing
contract." *Kramer v. Pollock-Krasner Foundation*, 890 F.Supp. 250, 258 (S.D.N.Y. 1995).
These more stringent requirements "reflect a policy according greater protection to an interest in
an existing contract... than to the less substantive, more speculative interests in a prospective
relationship." *International Minerals and Resources, Inc. v. Pappas*, 761 F. Supp. 1068, 1075
(S.D.N.Y. 1991).

interference since Plaintiff fails to support the conclusory allegations of intent with facts upon which the inference of intent can be drawn. *See, e.g., Walther v. Bank of New York*, 772 F. Supp. 754, 769 (S.D.N.Y. 1991) (conclusory allegations of intent insufficient); *Royal Society of Medicine v. International Society For Preventive Oncology, Inc.*, 602 F. Supp. 794, 797 (S.D.N.Y. 1985) (same).[10]

F.    **Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed**

Plaintiff finally reaches the end of his creativity with his fifth claim, again attempting to circumvent the well established New York public policy that minors have an absolute right to disaffirm their contracts. As discussed above in the context of Plaintiff's second claim for breach of contract, under *Metropolitan Model* any parental guarantee used to circumvent New York's public policy of protecting minors from their own improvidence is void. *Metropolitan Model*, 168 Misc.2d 324, 327, 643 N.Y.S.2d 923, 925 (Sup. Ct. N.Y. Co. 1996). To enforce such a parental guarantee under any legal theory "puts substantial pressure on the parents to urge their daughter to comply with an agreement she entered into as a minor, even if that agreement is not otherwise enforceable." *Id.* at 327, 643 N.Y.S.2d at 926. Moreover, also as discussed above, parental guarantees of unapproved entertainment contracts connected with New York are void under General Obligations Law § 3-107 -- no parent or guardian shall "be liable on the contract either as a party or as a guarantor of its performance." This New York public policy overrides contractual terms that are actually present, so it certainly overrides any terms Plaintiff hopes to imply.

---

[10]   To the extent that Plaintiff's allegations imply fraudulent conduct, they do not comply with the specificity requirements of Fed. R. Civ. P. 9(b). Plaintiff fails to allege all the elements of his claim, so his claim must be dismissed.

21

Furthermore, Plaintiff again cannot meet the pleading requirement for his claim.  In order to plead breach of an implied covenant of good faith and fair dealing, a Plaintiff must demonstrate the existence of a valid contract from which such a duty would arise.  *Schorr v. Guardian Life Ins. Co. of America*, 44 A.D.3d 319, 319, 843 N.Y.S.2d 24, 25 (1st Dep't 2007). A cause of action for breach of an implied duty of good faith and fair dealing must be dismissed where the claim is based on an unenforceable contract between the parties.  *Gotham Boxing Inc. v. Finkel*, Nos. 601479-07, 2008 WL 104155, at *7 (Sup. Ct. NY Co., 2008) (claim for breach of implied covenant of good faith and fair dealing is dismissed because underlying contract was not approved by the New York State Athletic Commission as required by law); *American-European Art Assoc. v. Trend Galleries, Inc.*, 227 A.D.2d 170, 171, 641 N.Y.S.2d 835, 836 (1st Dep't 1996) (no breach of implied duty of good faith fair dealing because contract did not comply with the Statute of Frauds).

In Plaintiff's last attempt at grabbing for straws, Plaintiff asserts a cause of action against Taylor's parents in connection with an unenforceable guarantee, for allegedly breaching their duty of good faith and fair dealing.  Plaintiff, however, cannot meet the pleading requirement for that claim, since the parental guarantees are not enforceable as discussed in this Section and Section C above.  Thus, Plaintiff's attempt to use these guarantees as the basis for an implied covenant of good faith and fair dealing claim must also fail.

22

1780706.4

## CONCLUSION

For the reasons set forth herein, Plaintiff's Complaint should be dismissed, with prejudice, against Defendants Taylor Swift, Scott Swift, and Andrea Swift in its entirety together with such other and further relief that the Court deems just and proper.

DATED:  April 15, 2008
       New York, New York

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: _____

Paul V. LiCalsi (PL-6622)
Howard H. Weller (HW-2745)
12 West 49th Street, 30th Fl
New York, NY 10020
(212) 546-7702 (P)
(202) 509-7239 (F)

*Attorneys for Defendants Taylor Swift,*
*Scott Swift and Andrea Swift*

1780706.4