MITCHELL SILBERBERG & KNUPP LLP
Paul V. LiCalsi (PL-6622)
Howard H. Weller (HW-2745)
12 East 49th Street, 30th Fl
New York, N.Y. 10017
(212) 509-3900

*Attorneys for Defendants Taylor Swift, Scott Swift and Andrea Swift*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DANIEL DYMTROW,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR SWIFT, SCOTT SWIFT and ANDREA SWIFT,<br><br>Defendants. | ) | Civil Action No. 07 CV 11277 (RJS) |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS**
**TAYLOR SWIFT, SCOTT SWIFT AND ANDREA SWIFT**
**<u>IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**


**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Unjust Enrichment .......... 2

II. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Breach of Contract .......... 6

III. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Promissory Estoppel .......... 8

IV. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Tortious Interference .......... 9

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Berman & Brickell, Inc. v. The Penn Central Corp.*,
1986 WL 9689 (S.D.N.Y. 1998) .......... 5

*Ecor Solutions, Inc. v. Malcolm Pirnie, Inc.*,
2005 WL 1843253 (N.D.N.Y. 2005) .......... 9

*Fine Foods International v. North America Fine Foods Inc.*,
1999 WL 1288681 (E.D.N.Y. 1999) .......... 2, n.4

*Four Finger Art Factory, Inc. v. Dinicola*,
2000 WL 145466 (S.D.N.Y. 2000) .......... 9

*Ionosphere Clubs, Inc. v. Ins. Co. of the State of Pennsylvania*,
85 F.3d 992 (2d Cir. 1996) .......... 8

*Leibowitz v. Cornell University*,
2007 WL 3019223 (S.D.N.Y. 2007) .......... 4

*Merex A.G. v. Fairchild Weston Systems*,
29 F.3d 821 (2d Cir. 1994) .......... 9, n.7

*R.B. Williams Holding Corp. v. Ameron International Corp.*,
2001 WL 266026 (W.D.N.Y. 2001) .......... 5

*Readco, Inc. v. Marine Midland Bank*,
81 F.3d 295 (2d Cir. 1996) .......... 8

*Simpri v. The City Of New York*,
2003 WL 23095554 (S.D.N.Y. 2003) .......... 9

### State Cases

*30 Broad, LLC v. Lawrence*,
12 Misc.3d 1179(A), 824 N.Y.S.2d 767, 2006 WL 1882410 .......... 8

*Casey v. Kastel*,
237 N.Y. 305, 314,142 N.E. 671 (1924) .......... 4

*Celle v. Barclays Bank, PLC*,
48 A.D.3d 301, 851 N.Y.S.2d 500 (1st Dep't 2008) .......... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Farnum v. O'Neill*,
141 Misc. 555, 252 N.Y.S. 900 (Mun. Ct., NY Co., 1931) ... 6

*Green v. Green*,
69 N.Y. 553 (1877) ... 5, 6

*Icovino v. Haymes*,
191 Misc. 311, 77 N.Y.S.2d 316 (N.Y. Mun. Ct. Richmond Co. 1948) ... 4

*In re Ferguson's Guardianship*,
41 N.Y.S.2d 862 (Surr. Ct., Westchester Co. 1943) ... 5, 6

*Joel v. Weber*,
153 Misc.2d 549, 581 N.Y.S.2d 579 (Sup. Ct. NY Co., 1992) ... 9, 10

*Lahr Constr. Corp. v. Kozel & Son, Inc.*,
168 Misc. 2d 759, 640 N.Y.S.2d 957 (Sup. Ct. Monroe Co. 1996) ... 8, n.7

*Lee v. Silver*,
262 A.D. 149, 28 N.Y.S.2d 333 (1st Dep't 1941) ... 10

*Metropolitan Model Agency USA, Inc. v. Rayder*,
168 Misc. 2d. 324, 643 N.Y.S. 2d 923 (Sup. Ct. NY Co., 1996) ... 6, 7

*Prichard v. 164 Ludlow Corp.*,
14 Misc.3d 1202(A), 831 N.Y.S.2d 362,
2006 WL 3626306 (Sup. Ct. NY Co., 2006) ... 8, 9

*Prinze v. Jonas*,
38 N.Y.2d 570, 345 N.E.2d 295, 381 N.Y.S.2d 824 (1976) ... 1, n.3

*Scott Eden Management v. Kavovit*,
149 Misc.2d 262, 563 N.Y.S.2d 1001 (Sup. Ct. Westchester Co. 1990) ... 2, 3, 5

*Spier v. Southgate Owners Corp.*,
39 A.D.3d 277, 833 N.Y.S.2d 459 (1st Dep't 2007) ... 8

*Swerdloff v. Mobil Oil Corp.*,
74 A.D.2d 258, 427 N.Y.S.2d 266 (2d Dep't 1980) ... 8, n.7

## TABLE OF AUTHORITIES
## (continued)

Page(s)

### State Statutes

**New York Arts and Cultural Affairs Law**
New York Arts and Cultural Affairs Law § 35.05 .......... 6
New York Arts and Cultural Affairs Law § 35.03 .......... 1, n.2

**New York General Obligations Law**
New York General Obligations Law § 3-107 .......... 7

### Rules

Federal Rule of Civil Procedure 12(b)(6) .......... 1,2, n.4

### Other Authorities

Legislative History, New York General Obligations Law § 3-107, 1961 Leg. Doc. No. 65(1); 1961 Report, Recommendations and Studies, p. 253 .......... 7

Restatement (Second) of Contracts § 90 .......... 8, n.7

This Reply Memorandum of Law is respectfully submitted on behalf of Defendants Taylor Swift, Scott Swift and Andrea Swift ("Defendants") in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint.

## PRELIMINARY STATEMENT

Nobody forced Plaintiff Daniel Dymtrow to enter into a management contract with Taylor Swift. He did so voluntarily. He also did so fully aware that she was fourteen years old at the time and that the contract could be voided if she later elected to disaffirm it. Thus, Plaintiff included a provision in the contract that required that Taylor cooperate with his efforts to obtain judicial approval of the contract.[1] This relatively simple method of restricting a minor's right to disaffirm a contract was designed by the legislature to protect the contracting adult from the consequences of the minor's disaffirmance.[2] The protection was needed in order to "provide a degree of certainty for parties contracting with infants in the entertainment industry so that the validity of such contracts would not be rendered doubtful" and so that an adult could "obtain assurance of a binding contract before expenditures are made in reliance on the contract."[3] Proceeding with judicial approval of minors' contracts is thus standard in the entertainment industry. Here, Plaintiff could have taken that simple precaution of seeking court approval but he chose not to. Any alleged loss to Plaintiff occasioned by Taylor's disaffirmance could have been avoided by declining to enter into the contract or by obtaining judicial approval. Plaintiff chose neither course. Instead he chose to assume the risk.

---

1 *See* Complaint, Exhibit A at ¶12(c).

2 *See New York Arts and Cultural Affairs Law* § 35.03

3 *Prinze v. Jonas*, 38 N.Y.2d 570, 575, 345 N.E.2d 295, 381 N.Y.S.2d 824 (1976).

Now, years after Taylor's disaffirmance, when Taylor is now a national star[4], Plaintiff has packaged together a deficient set of claims in a transparent effort to avoid the risk that he assumed years ago. Plaintiff has even gone so far as to allege tort claims against Taylor's parents, while ignoring the inviolable right that a parent has to advise his child. This effort to improperly extract unearned monies from Taylor and her parents, Scott and Andrea Swift, fails. Plaintiff cannot so easily avoid the consequences of his failure to obtain court approval nor ignore the ramifications of Taylor's disaffirmance. As set forth herein and in Plaintiff's moving Memorandum of Law, and Plaintiff's Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Unjust Enrichment

In support of Plaintiff's claim that he should be compensated for "the reasonable value of his performance"[5] Plaintiff rests largely on the inapposite case of *Scott Eden Management v. Kavovit*, 149 Misc.2d 262, 563 N.Y.S.2d 1001 (Sup. Ct. Westchester Co. 1990) -- a case which the Westchester County Supreme Court characterized as one of "first impression." Under the unique facts of that case, a management company was simply seeking the *continued* payment of commissions it had rightfully earned and had been receiving all along pursuant to the contract prior to the minor's disaffirmance. While the *Scott Eden* Court noted that it knew of no case that

4 Taylor's rise to national prominence as a GRAMMY nominated singer/songwriter has been achieved in spite of, not because of, her former association with Plaintiff. However, Defendants will not, on this 12(b)(6) motion, submit declarations to rebut Plaintiff's fanciful factual assertions. That Plaintiff has done so is not only irrelevant to the instant motion, but improper. *See Fine Foods International v. North America Fine Foods Inc.*, 1999 WL 1288681 at * 1 (E.D.N.Y. 1999). Accordingly, Defendants respectfully request that the Plaintiff's Declaration, dated May 14, 2008, be disregarded by the Court.

5 Plaintiff's Memorandum of Law in Opposition to Defendants' Motion To Dismiss (herinafter "Plaintiff's Opposition" or "P. Opp.") at 12.



1842086

raised the question "whether disaffirmance may void the *contractual obligation to pay agent's commissions* without any concomitant exchange being made" (149 Misc. 2d at 265, 563 N.Y.S. 2d at 1003 (emphasis added), it nevertheless reasoned that in light of the unique facts before it, the management company was already "entitled to [its] percentage fee" (*id.*,149 Misc. 2d at 266, 563 N.Y.S. 2d at 1003). Thus, the Court held that the minor "must continue to pay to plaintiffs all commissions to which plaintiff *would be entitled under their contract*, as they become due." *Id.*, 149 Misc. 2d at 267, 563 N.Y.S. 2d at 1004 (emphasis added).

Here, unlike in *Scott Eden*, Plaintiff's claim for unjust enrichment is not premised on allegations that Defendants denied Plaintiff commissions "on income from performance contracts already obtained" by Plaintiff. *Id.*, 149 Misc. 2d at 263, 563 N.Y.S. 2d at 1001. Rather, Plaintiff ignores the underlying EPMA and instead alleges a quantum meruit theory for payment – broadly speaking – for "his services." (Compl. at ¶ 2). Plaintiff asserts an entitlement for "expenditures made" and for "the reasonable value of his performance whether or not [Taylor] . . . benefited from the performance" (P. Opp. at 12) because, "had Mr. Dymtrow not been occupied with efforts to promote and advance Artist and her Parents, he would have directed those efforts, time, and energy profitably on behalf of other clients." (Compl. at ¶ 81).

However, the litany of "services" purportedly performed by Plaintiff for which he now (nearly three years after disaffirmance) seeks compensation[6] are not properly the subject of

[6] For example, Plaintiff states that he (i) "devoted a significant amount of time towards planning [Taylor's] career, helping to sharpen her talent and skills, exposing her to career building opportunities"(Compl. at ¶ 1); (ii) "focused [Taylor's] attention on improving her skills, worked to create a unique image . . . that the public would accept, and procured opportunities and contracts that furthered [her] career" (Compl. at ¶ 20); (iii) "arranged for consultants to help [] improve her skills (singing/vocal training, stage performance, branding /imaging /marketing, styling, etc.), encouraged [her] to write her own songs, educated [her] and her family about marketing" (Compl. at ¶ 23); (iv) "initiated meetings with

(...continued)

recovery under a theory of unjust enrichment or quantum meruit because those services (even if truly performed – and they were not) would never have been compensable under the EPMA in the first place. There can be no basis, for example, for expecting compensation for allegedly arranging for vocal training consultants. (Compl. at ¶ 23). *See, e.g., Leibowitz v. Cornell University*, 2007 WL 3019223 at *11-12 (S.D.N.Y. 2007) (expectation of compensation was unreasonable, particularly where no contract existed governing particular services performed).

To the extent that any such services have been performed, they have resulted in an intangible benefit incapable of being returned. *See Icovino v. Haymes*, 191 Misc. 311, 312-13, 77 N.Y.S.2d 316, 318 (N.Y. Mun. Ct. Richmond Co. 1948) (no recovery for value of arranging voice lessons following disaffirmance as minor was incapable of surrendering the knowledge acquired from instruction). Indeed, as the New York Court of Appeals long ago stated, the right of a minor to rescind a contract does not depend on her ability to restore alleged consideration or otherwise make restitution of that which is not capable of being returned. *Casey v. Kastel*, 237 N.Y. 305, 314,142 N.E. 671, 674 (1924). Thus, even if Defendants were responsible for returning any consideration (and they are not), there exists no quantifiable tangible benefit in their possession to return. *See also Green v. Green*, 69 N.Y. 553, 556 (1877), *quoted in In re Ferguson's Guardianship*, 41 N.Y.S.2d 862, 864 (Surr. Ct., Westchester Co. 1943) ("right to

---

(...continued)
prominent members of the entertainment industry" (Compl. at ¶ 24); exposed Taylor to "fashion, television, and film industries, and created opportunities for [her] that contributed to her success" (Compl. at ¶ 27); (v) "secured a performance for [Taylor] at the Florida Musical Festival . . . . [and] arranged for [her] to perform on the single VIP stage" (Compl. at ¶ 25a); (vi) "scheduled several showcase performances . . . in New York City venues" (Compl. at ¶ (25b); (vii) "introduced [Taylor] to [record] executives" (Compl. at ¶ 25c); (viii) "accompanied [Taylor] during a pre-arranged week-long showcase of [her] talent" (Compl. at ¶ 25d); and (ix) "'shopped' [Taylor] to major record labels" (Compl. at ¶ 28).

rescind is a legal right established for the protection of the minor, and to make it dependant on performing an impossibility . . .would impair the right and withdraw the protection").

To the extent that Plaintiff also seeks compensation for allegedly being the "efficient producing cause of [Taylor's] various agreements" (Compl. at ¶ 77), Plaintiff again seeks to recover for that which is beyond the scope of the EPMA and therefore outside of any expected compensation. The "efficient producing cause" doctrine refers to broker commissions and finds an entitlement to commissions where the broker brings parties together in an amicable atmosphere allowing negotiations to proceed between the parties leading to a sale. *R.B. Williams Holding Corp. v. Ameron International Corp.*, 2001 WL 266026 at *12 (W.D.N.Y. 2001); *Berman & Brickell, Inc. v. The Penn Central Corp.*, 1986 WL 9689 at *2 (S.D.N.Y. 1998). Even assuming Plaintiff was the "efficient producing cause" of an agreement (and he was not), there is, however, no such entitlement to commissions set forth in the EPMA and therefore there could be no concomitant expectation of compensation.

In addition, the Westchester Supreme Court's decision in *Scott Eden*, if taken to its logical conclusion, would require that a minor may disaffirm a wholly executory personal services contract only by performing on it. This would render the right of disaffirmance wholly illusory. If the consideration to be restored is simply that which the minor agreed to provide in the contract, the purpose behind New York's strong public policy of affording minor's the right to disaffirm would be severely undermined. The right to repudiate a contract is based on the incapacity of the minor to contract." *See In re Ferguson's Guardianship*, 41 N.Y.S.2d 862, 864 (Surr. Ct., Westchester Co. 1943) (quoting *Green v. Green*, 69 N.Y. 553, 556 (1877). Since "infants are not endowed with sufficient business acumen and sagacity in their dealings . . . persons transacting business with them, particularly with knowledge of this incapacity, do so at

their own peril." *Id.* To provide a recovery to a plaintiff who refuses to obtain judicial scrutiny of a subsequently disaffirmed personal services contract, is essentially to require a minor to fulfill her obligations to the manager as though she had not disaffirmed at all. *See Farnum v. O'Neill*, 141 Misc. 555, 556, 252 N.Y.S. 900, 903 (Mun. Ct., NY Co., 1931).

## II. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Breach of Contract

In an effort to circumvent the consequences of his failure to obtain judicial approval of the EPMA, Plaintiff seeks to hold Taylor's parents to a guarantee of Taylor's performance. In so doing, Plaintiff essentially seeks to render Taylor's disaffirmance a nullity. Imposing liability on a parental guarantee of a disaffirmed minor's contract is inconsistent with New York's strong public policy of "protecting minors from their own improvidence." *Metropolitan Model Agency USA, Inc. v. Rayder*, 168 Misc. 2d. 324, 327, 643 N.Y.S. 2d 923, 925 (Sup. Ct. NY Co., 1996). Plaintiff, however, reads *Metropolitan Model* selectively and, by concluding that the Court ruled in favor of the parents because "the guarantee was of an illegal contract" (P. Opp. at 16), Plaintiff ignores the strong policy considerations set forth in that case. Two agreements were at issue in *Metropolitan Model*: (i) the underlying child model agreement governed by New York law, and (ii) the parental guarantee governed by Florida law. The Court found the underlying child model agreement to be unenforceable because the agreement failed to comply with requirements of New York Arts and Cultural Affairs Law § 35.05 governing child models. *Metropolitan Model*, 168 Misc. 2d. at 326-27, 643 N.Y.S. 2d at 925.

The guarantee, on the other hand, contemplated the potential unenforceability of the child agreement and obligated the parents to guarantee their daughter's performance or pay money damages. *Id.*, 168 Misc. 2d at 326, 643 N.Y.S. 2d at 925. The Court nevertheless also found the

guarantee to be void. Although Florida law governed that agreement, the Court found that it would not apply the law of the sister State "when to do so would violate our public policy." *Id.*, 168 Misc. 2d at 327, 643 N.Y.S. 2d at 926. Specifically, the Court held that enforcing the guarantee contravenes New York's public policy of protecting minors from exploitation by adults and would otherwise put "substantial pressure on the parents to urge their daughter to comply with an agreement she entered into as a minor, even if that agreement is not otherwise enforceable." *Id.*, 168 Misc. 2d at 327, 643 N.Y.S. 2d at 925-26. The same policy considerations are at stake here. Plaintiff is trying to bind Taylor and her parents to continued performance of an unapproved, disaffirmed contract. Permitting Plaintiff's claim to proceed is, as in *Metropolitan Model*, effectively forcing Taylor's parents to "urge their daughter to comply with an agreement" that she otherwise has the absolute right to disaffirm.

Significantly, New York General Obligations Law § 3-107 fully supports the holding of *Metropolitan Model* by explicitly voiding parental guarantees of unapproved entertainment contracts with minors connected to New York. The legislative history of this statute describes that its "purpose is to make approval of the contract . . . a condition precedent to liability of a parent or guardian upon the contract either as a party or as a guarantor of its performance." 1961 Leg. Doc. No. 65(1); 1961 Report, Recommendations and Studies, p. 253 *et seq*. Here, Taylor disaffirmed an unapproved contract thereby refusing to "promptly advise her Manager of all viable offers of employment" (Compl., Exhibit A, p. 1), who was located in New York (Compl. ¶ 5), and refused to perform any further "services detailed in the EPMA" (Compl. ¶ 19) or "services under the EPMA" (Compl. ¶ 84) to be rendered in New York. This satisfies the conditions of § 3-107. This is especially so where, as here, the EPMA, by its own terms, is to be



1842086

"governed by the laws of the State of New York applicable to contracts entered into and *performed entirely within the State of New York.*" (Compl. Ex. A, p. 5) (emphasis added).

**III. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Promissory Estoppel**

Plaintiff has not cited any authority that contradicts consistent case law requiring unconscionable injury as a result of the alleged reliance in the context of a claim for promissory estoppel under New York law. *See Ionosphere Clubs, Inc. v. Ins. Co. of the State of Pennsylvania*, 85 F.3d 992, 999 (2d Cir. 1996); *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996); *Spier v. Southgate Owners Corp.*, 39 A.D.3d 277, 278, 833 N.Y.S.2d 459, 460 (1st Dep't 2007); *Prichard v. 164 Ludlow Corp.*, 14 Misc.3d 1202(A), 831 N.Y.S.2d 362, 2006 WL 3626306 at *10 (Sup. Ct. NY Co., 2006); *30 Broad, LLC v. Lawrence*, 12 Misc.3d 1179(A), 824 N.Y.S.2d 767, 2006 WL 1882410 at * 3 (Sup. Ct. NY Co., 2006). Moreover, Plaintiff has not and cannot allege such an injury since loss of commissions or out of pocket expenditures do not rise to the level of injury required.[7] *See, e.g., Spier*, supra, 39 A.D.3d at 278, 833 N.Y.S.2d at 460 (out of pocket expenditures do not constitute unconscionable injury warranting application of promissory estoppel).

---

[7] Plaintiff cites to *Restatement (Second) of Contracts* § 90 and to *Lahr Constr. Corp. v. Kozel & Son, Inc.*, 168 Misc. 2d 759, 640 N.Y.S.2d 957 (Sup. Ct. Monroe Co. 1996) but fails to note that *Lahr* questions whether promissory estoppel based upon detrimental reliance as a substitute for consideration as set forth in § 90 of the *Restatement* is even applicable in New York.. *Lahr* acknowledges that detrimental reliance promissory estoppel has had only "tentative application" in New York and has not been adopted by the Court of Appeals. *Id.* 168 Misc. 2d at 762-63, 640 N.Y.S.2d at 959-60. *See also Swerdloff v. Mobil Oil Corp.*, 74 A.D.2d 258, 261, 427 N.Y.S.2d 266, 268 (2d Dep't 1980) (detrimental reliance variety of promissory estoppel "has not been the law of New York, with narrow exceptions based on unusual circumstances"). In any event, Plaintiff's alleged entitlement to compensation from Taylor's parents is, according to the Complaint, supported by consideration and to sustain a claim for promissory estoppel here, unconscionable injury is required. *See Merex A.G. v. Fairchild Weston Systems*, 29 F.3d 821, 824-26 (2d Cir. 1994) (plaintiff invoked the doctrine of promissory estoppel to recover damages based on breach of commissions agreement and unconscionable injury required as the "alleged commission agreement was certainly supported by consideration").

Plaintiff's claim for promissory estoppel also should be dismissed as it is merely duplicative of the insufficiently pled breach of contract claim. Plaintiff has not asserted a legal duty extraneous to the guarantee nor has he alleged a promise outside the scope of the guarantee. *See Simpri v. The City Of New York*, 2003 WL 23095554 at *8 (S.D.N.Y. 2003); *Four Finger Art Factory, Inc. v. Dinicola*, 2000 WL 145466 at *8 (S.D.N.Y. 2000); *Celle v. Barclays Bank, PLC*, 48 A.D.3d 301, 851 N.Y.S.2d 500, 501 (1st Dep't 2008); *Prichard, supra*, 14 Misc.3d 1202(A), 831 N.Y.S.2d 362, 2006 WL 3626306 at *10. Plaintiff merely asserts that Taylor's parents allegedly promised to protect Plaintiff's economic interests, to guarantee that Taylor would perform pursuant to the EPMA and to refrain from encouraging Taylor not to perform under the EPMA. (Compl. at ¶¶ 94-97). These alleged promises fall entirely within Plaintiff's second cause of action for breach of contract and therefore must be dismissed.

## IV. Plaintiff Has Failed To Demonstrate Any Basis Upon Which To Sustain His Claim For Tortious Interference

In an overreaching attempt to attach tort liability to Taylor's father, Plaintiff argues without support that he has pled all of the necessary elements of a claim for tortious interference with prospective economic opportunity. P. Opp. at 23. Plaintiff's complaint, however, contains no more than conclusory allegations that Taylor's father's alleged actions were "willful, malicious and/or fraudulent." Compl. at ¶ 107. It is well-settled that allegations that merely recite the general legal conclusions required to sustain a claim unsupported by factual averments "will not be accepted as true" and "will not prevent a court from granting a motion to dismiss." *Ecor Solutions, Inc. v. Malcolm Pirnie, Inc.*, 2005 WL 1843253 at * 3 (N.D.N.Y. 2005); *see also Joel v. Weber*, 153 Misc.2d 549, 551, 581 N.Y.S.2d 579, 581 (Sup. Ct. NY Co., 1992) ("conclusory allegations that defendant acted 'wrongfully, knowingly, intentionally, maliciously'" insufficient to satisfy pleading requirement). Nor does Plaintiff get any further

with the argument that the claim for tortious interference is somehow viable because of alleged "threats" made by Taylor's father to Taylor that he would end all economic support for her if she did not disaffirm the contract. P. Opp. at 23; Compl. at ¶ 104. Defendants have discussed at length in their moving brief the bedrock principle that a parent, even if acting maliciously, may advise a child to disaffirm a contract without incurring liability. *Lee v. Silver*, 262 A.D. 149, 151, 28 N.Y.S.2d 333, 336 (1st Dep't 1941). It is unclear how signing a guarantee undermines this principle. Indeed, the principle set forth in *Lee* has, not surprisingly, been extended to spouses as well. *See, e.g., Joel, supra*, 153 Misc.2d at 551-52, 581 N.Y.S.2d at 581 ("The persuasive ability of either spouse to cause the other to alter business relationships should not be subject to judicial scrutiny as to the propriety thereof").

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Complaint should be dismissed, with prejudice, against Defendants Taylor Swift, Scott Swift, and Andrea Swift in its entirety together with such other and further relief that the Court deems just and proper.

DATED: May 22, 2008
New York, New York

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: ______________________

Paul V. LiCalsi (PL-6622)
Howard H. Weller (HW-2745)
12 East 49th Street, 30th Fl
New York, NY 10020
(212) 509-3900 (P)
(202) 509-7239 (F)
*Attorneys for Defendants Taylor Swift, Scott Swift and Andrea Swift*