"EXHIBIT A"

ORIGINAL

Dan Dymtrow
155 East 23rd Street, #510
New York, NY 10010

March 25, 2003

Taylor Swift
78 Grand View Blvd.
Wyomissing, PA 19609

Re: Exclusive Personal Management Agreement

Dear Taylor:

The following, when signed by you (referred to herein as "Artist") and I ("Manager"), will constitute a complete and binding agreement between Artist and Manager with respect to Artist's engagement of Manager as Artist's exclusive personal manager on the terms and conditions contained herein:

1. Territory: The World

2. Scope of Manager's Activities:

(a) Manager shall be Artist's exclusive personal manager in the "Entertainment Industry" (as defined below) and Manager shall confer with, counsel and advise Artist in all matters and activities pertaining to Artist's career in the Entertainment Industry.

(b) Artist shall promptly advise Manager of all viable offers of employment, and of all inquiries concerning Artist's career, so that Manager may consult with and advise Artist whether same are compatible with Artist's career. Notwithstanding the foregoing, but except as specifically provided for hereinbelow, Manager shall not commit Artist or accept any such employment offers on Artist's behalf, without Artist's prior written approval.

3. Term:

(a) The term of this Agreement (the "Term") shall be for a period commencing upon the date hereof, and ending upon the expiration of the "Second Album Cycle", which for purposes of this Agreement shall be deemed to be the later of (x) sixty (60) days after the completion of all personal appearances and concerts performed by Artist in connection with her second album recorded following the date hereof (the "Second Album"), and (y) the date that Artist commences pre-production activities for the next succeeding album embodying newly recorded studio performances of Artist to be delivered to Artist's record company after the delivery of the Second Album (such album is referred to herein as the "Third Album").

(b) Notwithstanding anything to the contrary contained herein, Artist shall have the right to terminate the Term by notice to Manager if within eighteen (18) months from the commencement date hereof (the "18 Month Period"), Artist has not entered into an agreement for Artist's services as a

recording artist with a major U.S. record company or with a record label distributed by a major record company (the major record companies as of the date hereof being Sony Music, Inc., the record companies compromising the WEA Group, BMG Records, EMI, and the record companies comprising the Universal Music Group). Such notice of termination, in order to be effective, must be sent by Artist to Manager not later than sixty (60) days following the end of the 18 Month Period.

4. Manager's Commission:

(a) (1) During the Term, Manager shall be entitled to receive from Artist, twenty (20%) percent (the "Fee") of Artist's "Gross Income" as a result of or in connection with Artist's activities in the Entertainment Industry during the Term.

(2) Notwithstanding anything to the contrary above, Manager's participation in Artist's Gross Income earned, received or credited after the Term in connection with Artist's services and activities rendered or products created during or after the Term pursuant to contracts or agreements (oral or written) entered into or substantially negotiated during the Term, including any and all renewals, extensions modifications, substitutions, and additions thereto, shall continue for a period of four (4) years following the expiration or termination of the Term hereof (the "Post Term Period"), and shall be as follows:

| Post-Term Years | Fee |
|---|---|
| 1 & 2 | 10% of the Gross Income |
| 3 | 7.5% of the Gross Income |
| 4 | 5% of the Gross Income |

(b) As used in this Agreement,

(1) "Entertainment Industry" includes, without limitation, all services and activities in such fields of endeavor as phonograph records (including but not limited to recording and production), transcriptions, musical and/or dramatic performances, singing, radio, television, motion pictures, music, publishing, personal appearances, concerts, road shows, tours, café and cabaret performing, hotel, restaurant and private function performing, literary and theatrical engagements, radio and television commercials, commercial merchandising, endorsements and tie-ins and for all and any other media of entertainment for which Artist may be or become qualified; and the sale, lease or other disposition of musical, literary, dramatic or other artistic material which Artist may create, compose, write or collaborate, directly or indirectly, in whole or in part, in any and all fields; and any act, unit or package show of which Artist may be the owner or part owner, directly or indirectly; and

(2) "Gross Income" shall mean all forms of income, payments, consideration, compensation, sums, emoluments or any other thing of monetary value, including, salaries, advances, fees, royalties, bonuses, gifts, shares of receipt, stock and stock options paid to credited to, or received by Artist (or any corporation, partnership, or other entity in which Artist has an interest, regardless of by whom procured) as a result of Artist's activities in and throughout the "Entertainment Industry". Notwithstanding the foregoing, Gross Income shall not include (such excluded monies are sometimes referred to herein as the "Excluded Portion of Gross Income"):

(i) monies paid to Artist under a recording agreement used to pay actual recording and production costs (including monies paid to third party producers and third party mixers) of Artist's master recordings and audiovisual works;

(ii) any monies paid to Artist as reimbursement for so-called "sound and lights" in connection with live engagements;

(iii) commissions paid to booking agents (not to exceed ten (10%) percent);

(iv) in the event Artist independently manufactures merchandise related to Artist's activities within the Entertainment Industry, any direct and actual out-of-pocket expenses directly incurred by Artist and/or paid to third parties (excluding, however, third-party commissions) in connection with merchandise directly manufactured by Artist;

(v) any income derived by Artist from any business investment entrepreneurial activities or other non-entertainment related activities provided, however, that income derived from the writing or co-writing of books or other publications shall be considered Gross Income hereunder;

(vi) income derived from agreements substantially negotiated and entered into after the expiration or termination of the Term. In this connection, all agreements substantially negotiated during the Term and consummated within three (3) months thereafter shall be deemed entered into during the Term;

(vii) all music publishing income earned by Artist but retained by or paid to third parties, including, without limitation, songwriter royalties payable to co-writers and publishing company administration fees;

(viii) payments to Artist under a recording agreement in the nature of recoupable deficit tour support payments to the extent that such payments are actually used by Artist for such purpose; and

(ix) in connection with live performances where monies payable to Artist include monies payable to a so-called "opening act" (provided that Artist is not the opening act), such monies as Artist pays to such opening act.

(c) All Gross Income shall be paid to and collected by an accountant, accounting firm or business manager (the "Accountant") selected by Artist in consultation with Manager. Artist will cause the Accountant to account for and pay to Manager all monies payable to Manager herein. Manager shall have the right to reasonable inspection of the Artist's and Accountant's books and records in order to verify the accuracy of such accountings. Manager's Fee shall be paid to Manager within fourteen (14) days following Accountant's (or Artist's) receipt of the Gross Income to which such Fee relates.

5. Manager's Power of Attorney:

Artist hereby irrevocably authorizes and appoints Manager as Artist's true and lawful agent and attorney-in-fact solely for the purposes of approving and permitting the use of Artist's name (actual and professional), photographs, likenesses, and the like which have been previously approved by Artist for purposes of advertising and promotion of any and all of Artist's products and services & to sign documents on Artist's behalf for Artist's live musical performance services of no longer than two (2) nights.

6. Manager's Outside Activities:

(a) The parties hereby acknowledge that from time to time during the Term hereof,

Manager or other persons or entities (i)that are owned and/or controlled by Manager, or (ii) that, own and/or control Manager, or (iii) that are in common ownership and/or control with Manager ("Manager's Affiliates"), may package an entertainment program in which Artist is engaged or may act as the entrepreneur or promoter of an entertainment program in which Artist is engaged, or may engage Artist in connection with the recording and/or production of phonograph records, or as a songwriter, composer, arranger or otherwise in connection with the creation of literary or musical works. Any such activity on the part of Manager or Manager's Affiliates shall not (A) constitute a breach of this Agreement or of Manager's fiduciary obligations and duties to Artist, or (B) in any way affect Manager's right to its fee hereunder except as set forth in paragraph 6(b).

(b) Manager shall not be entitled to its fee from Artist in connection with any monies or other consideration derived by Artist (i) from any employment or agreement whereunder Artist is employed by Manager (or by Manager's Affiliates) in which Manager (or Manager's Affiliates) is acting as (A) the packager of the entertainment program in which Artist is so employed, or (B) Artist's music or literary publisher, or (C) Artist's record company; or (ii) from the sale, license or grant of any literary or musical rights to Manager (or to Manager's Affiliates).

(c) Solely with respect to subparagraph 6(b) hereinabove, Artist understands and agrees that Manager shall not render, nor shall Manager be obligated to render, the personal management services contemplated in this Agreement with respect to the aforesaid non-commissionable activities, and in connection therewith, Artist shall have the right to seek and retain independent advice.

7. <u>Management Expenses</u>:

Artist will reimburse Manager for any and all expenses incurred by Manager on Artist's behalf in connection with the activities referred to in paragraph 1 hereof, provided that:

(1) Artist will not be responsible for any portion of Manager's overhead expenses;

(2) Manager shall not incur any single expense in excess of Five Hundred ($500.00) Dollars without Artist's prior written consent; and

(3) Manager shall not incur aggregate monthly expenses in excess of Two Thousand Five Hundred ($2,500.00) Dollars without Artist's prior written consent.

8. <u>Warranties and Representations</u>:

(a) Artist warrants, represents and agrees that:

(1) Artist is not under any disability, restriction or prohibition, either contractual or otherwise, with respect to Artist's right to execute this agreement or to fully perform its terms and conditions; and

(2) Manager's activities on Artist's behalf under this agreement will not infringe upon, violate or interfere with the rights, whether statutory, or otherwise, of any one or more third parties.

(b) Manager warrants, represents and agrees that Manager is not under any disability, restriction or prohibition, either contractual or otherwise, with respect to Manager's right to execute this agreement or to fully perform its terms and conditions.

9. Indemnification:

Artist and Manager agree to and do hereby indemnify, save and hold the other harmless from all loss, damage and expenses (including reasonable outside attorney's fees) arising out of or connected with any third party claim which shall be inconsistent with any agreement, warranty or representation made by Artist or Manager in this agreement, provided same is reduced to final judgment or settled with the consent (which consent shall not be unreasonably withheld) of the other. Artist and Manager agree to reimburse the other, on demand, for any payment made at any time after the date hereof with respect to any liability to which the foregoing indemnity applies. The indemnifying party shall be notified of any such third-party claim, action or demand and shall have the right, at it's own expense, to participate in the defense thereof with counsel of it's own choosing; provided, however, the other party's decision in connection with the defense of any such claim, action or demand shall be final.

10. Cure:

The failure by either party to perform any of its material obligations hereunder shall not be deemed a breach of this agreement (and neither party shall have the right to terminate this agreement) unless the party alleged to be in default is given written notice of such failure to perform and such failure is not corrected within 30 days from and after receipt of such notice..

11. Notices:

All notices pursuant to this agreement shall be in writing and shall be given either by personal delivery, registered or certified mail (return receipt requested), or facsimile (with written confirmation via first class mail) at the respective addresses herein above set forth or such other address or addresses as may designated by either party. All such notices shall be deemed given hereunder on the date delivered or faxed, except that a notice of change of address shall be effective only from the date of its receipt. Copies of all notices to Artist shall be sent to Vivien Lewit, Esq., c/o Davis, Shapiro, Lewitt, Montone & Hayes, LLP, 689 Fifth Avenue, 5th Floor, New York, New York 10022, and copies of all notices to Manager shall be sent to Kristi N. Gamble, Esq., c/o Kaplan & Gamble, LLP, 432 Park Avenue South, 2nd Floor, New York, New York 10016.

12. Additional Provisions:

(a) Artist and Manager hereby acknowledge and agree that Manager is not an employment agent, theatrical agent, or licensed artist's manager, and that Manager has not promised to procure employment or engagements for Artist, and that Manager shall not be obligated to procure or to attempt to procure any employment or engagements for Artist hereunder. Artist shall be solely responsible for payment of all necessary commissions to booking or similar agencies.

(b) This agreement has been entered into in the State of New York, and the validity, interpretation and legal affect of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York. The New York courts, only, will have jurisdiction of any controversies regarding this Agreement, and any action or other proceeding which involves such a controversy will be brought in the courts located within the State of New York, and not elsewhere. Any process in any action or proceeding commenced in the courts of the State of New York arising out of any such claim, dispute or disagreement; may, among other methods, be served upon the parties of this Agreement by delivering or mailing the same, via registered or certified mail, addressed to the applicable party at the address first above written or such other address as Artist or Manager may

designate pursuant to paragraph 13 hereof. Any such delivery or mail service shall be deemed to have the same force and effect as personal service within the State of New York.

(c) Notwithstanding anything contained herein to the contrary, Artist has advised Manager that Artist is under eighteen (18) years of age. Artist shall cooperate with reasonable requests by Manager in connection with any proceedings Manager may institute to obtain judicial approval of this Agreement. In that regard, Artist hereby consents to the establishment of any trust fund or savings plan for Artist's benefit as the court to which such petition for approval is submitted deems just and proper. At any time after Artist reaches the age of eighteen (18) years (or such other age as may be deemed the age of majority for purposes hereof), Artist shall, upon Manager's request, reaffirm in writing the validity and enforceability of this Agreement. If Manager is unable to obtain judicial approval of this Agreement, or if Artist fails to so reaffirm this Agreement within ten (10) days after Manager's request therefor, Manager shall have the right (but not the obligation, and without limiting Manager's other rights and remedies) to terminate the Term hereof, in which event Manager shall have no further obligations to Artist hereunder (other than the obligation to pay royalties due, if any). Artist hereby agree to cause Artist's legal guardian(s) to sign the inducement letters/parental agreement attached hereto as Exhibit "A".

(d) ARTIST HEREBY ACKNOWLEDGES THAT SHE HAS BEEN ADVISED BY MANAGER OF HER RIGHT TO RETAIN INDEPENDENT LEGAL COUNSEL TO ADVISE HER IN CONNECTION WITH THIS AGREEMENT, AND THAT ARTIST HAS AVAILED HERSELF OF SUCH RIGHT OR HAS KNOWINGLY WAIVED SUCH RIGHTS. ARTIST ACKNOWLEDGES THAT SHE HAS NOT BEEN INFLUENCED TO ANY EXTENT WHATSOEVER IN EXECUTING THIS AGREEMENT BY ANY REPRESENTATIONS OR STATEMENTS WITH RESPECT TO ANY MATTERS MADE BY MANAGER OR BY ANY OF MANAGER'S PRINCIPALS OR EMPLOYEES.

Very truly yours,

DAN DYMTROW

By: [signature]

ACCEPTED AND AGREED TO:

[signature]

TAYLOR SWIFT

Candace R Shaffer

Notarial Seal
Candace R. Shaffer, Notary Public
Wyomissing Boro, Berks County
My Commission Expires Sept. 26, 2006
Member, Pennsylvania Association of Notaries

April 5, 2004

EXHIBIT "A"
Scott and Andrea Swift
78 Grand View Blvd,
Wyomissing, PA 19609

March 25, 2003

Dan Dymtrow
155 East 23rd Street, #510
New York, NY 10010

Dear Dan:

I have been advised that Taylor Swift (hereinafter referred to as "Artist") has entered into a management agreement dated as of March 25, 2003 with you (the "Agreement"). I acknowledge that I have read and am familiar with the Agreement.

In consideration of your entering into the Agreement with Artist, and as further inducement to you to do so (it being to my benefit that you enter into same), I hereby agree as follows:

1. I am Artist's legal guardian;

2. Artist is presently a minor;

3. I will cooperate with you and shall sign such documents as you may reasonably request in connection with any proceeding to obtain judicial approval of the Agreement;

4. I guarantee, absolutely and unconditionally, the performance by Artist of all of Artist's obligations pursuant to the Agreement, and shall indemnify and hold you harmless from any act, error or omission of Artist in the performance of Artist's services and obligations under the Agreement.

Very truly yours,

Scott Swift

Andrea Swift

Sworn to before me this 5 day of April 2004

Candace R Sheffler
Notary

Notarial Seal
Candace R. Sheffler, Notary Public
Wyomissing Boro, Berks County
My Commission Expires Sept. 26, 2006
Member, Pennsylvania Association of Notaries