**"EXHIBIT D"**

# TALENT SERVICES AGREEMENT

This Talent Services Agreement (the "Agreement") is made and entered into as of this ___ day of ____________April, 2004, by and between Abercrombie & Fitch Merchandising & Design Co., an Ohio corporation ("A&F"), and ____________________Taylor Swift, an individual ("Talent"). For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## Background Information

A. Talent is in the business of posing for photographic images.

B. A&F desires to photograph Talent and, at A&F's sole discretion, incorporate the resulting photographic images (or portions thereof) into various media in connection with the advertising and promotion of A&F stores and A&F's apparel products.

## Agreement

1. Talent's Duties and Grants of Rights. The Talent hereby agrees as follows:

a. to attend an eight (8) hour (not including any required fitting and/or planning sessions) photographic session on April 5 or April 6, 2004 (date to be mutually agreed by the parties) in the Los Angeles, California area at a time and location to be identified by A&F (the "Shoot"). Talent further agrees to attend all fitting and/or planning sessions related to the Shoot at mutually agreed dates and times;

b. to grant, and does hereby grant, A&F the right and license to take, or have taken, an unlimited number of photographs of Talent during the Shoot through the use of professional still photography equipment or equivalent (hereinafter referred to as the "Images");

c. to grant, and does hereby grant, A&F, and its successors, assigns, licensees, legal representatives and other designees, the limited right and license to use, distribute, reproduce, publish, display, transmit and perform publicly Talent's name and likeness as embodied in the Images, solely in connection with the Permitted Uses described in Section 2 below and only during the Use Period (as defined below). Talent further acknowledges and agrees that the foregoing right and license to use Talent's likeness as embodied in the Images includes the right to use all portions, composites, distortions or alterations thereof;

d. that Talent expressly authorizes and grants to A&F all permissions, licenses, waivers and rights of any kind required in order for A&F to sublicense all rights and licenses granted in clause (c) immediately above which A&F deems necessary for purposes of producing and manufacturing the advertising and promotional materials contemplated by Section 2 of this Agreement;

e. that Talent waives any right to inspect or otherwise approve the media into which the Images and/or Talent's name are incorporated (including any accompanying written copy) or the uses to which such media is put, provided that such media and uses are in compliance with all other terms, conditions and restrictions hereof that relate thereto; and

f. that any use of Talent's name or likeness which is not contemplated herein shall be conditioned on the express written approval of Talent's then-current authorized agent.

2. Permitted Use of Images.

2.1 Use Period. For the purposes of this Agreement, the term "Use Period" shall mean the twelve (12) month period commencing upon the earlier of (i) the date of A&F's first commercial use of any Image or (ii) July 1, 2004. During the Use Period, A&F may, in its sole discretion, use any or all of the Images in connection with the advertising and promotion of A&F stores and A&F's apparel products, whether branded or unbranded, through any one or more of the following means (collectively, the "Permitted Uses"):

a. print media, including without limitation all print advertisements and collateral extensions;

b. outdoor and related indoor advertising media, including without limitation, airport and transit advertising, billboards and projections onto outdoor and indoor walls;

c. point of sale/point of purchase media, including, without limitation, consumer brochures, counter cards, tent cards, fixture header visuals, in-store signage, posters and banners, and other collateral point of sale uses;

d. promotional and marketing media, including, without limitation, catalogs and magalogs, direct marketing materials, materials for sales meetings, including trade brochures;

e. public relations uses including, without limitation, press releases;

f. Internet uses, including, without limitation, display on A&F's Website(s); and

g. editorial content contained within direct marketing materials or displayed on the World Wide Web, including, without limitation, on A&F's Website(s).

A&F shall notify Talent in writing of the date of commencement of the Use Period. A&F's use of the Images shall be limited to North America; provided, however, that to the extent that access to A&F's Website(s) may be obtained from outside of North America, A&F shall have a worldwide right and license to use the Images in accordance with the terms of this Agreement solely with respect to the pPermitted uUses identified in clauses (f) and (g) immediately above. Talent acknowledges and agrees that A&F shall have no obligation to use any of the Images for any of the Permitted Uses or in any other manner.

2.2 Continuing Rights. Notwithstanding the foregoing limitations, A&F shall have a continuing right to use all materials produced under this Agreement that incorporate any Image for (i) A&F's internal archival and historical purposes, and (ii) for incorporation into A&F's Securities and Exchange Commission and/or shareholder reports.

2.3 Additional Restrictions on Permitted Use. A&F shall not use Talent's name or likeness in a manner that is libelous or defamatory.

2.4 No Endorsement. Each party understands and agrees that, by entering into this Agreement, Talent has in no way committed to endorse A&F or any of A&F's products, and nothing herein obligates Talent to provide Talent's opinion regarding A&F or any of A&F's products.

2.5 No Nudity. A&F shall not cause Talent to pose nude, partially nude (revealing a private part of Talent's body typically covered when wearing a bathing suit), or in a compromising, indecent or sexually suggestive position.

3. Compensation. In full consideration for the Talent's services rendered and all usage and other rights granted to A&F under this Agreement, A&F agrees to pay the Talent, and the Talent agrees to accept, compensation as follows:

for Talent's services at the Shoot and all Permitted Use during the Use Period, a one-time fee of $10,000 payable not later than forty-five (45) days after the Shoot.

A&F will not pay to any other individual, for services that are the same as the services provided by Talent under this Agreement, fees that are higher than the fees to be paid to Talent pursuant to this Section 3.

4. Representations and Warranties.

4.1 Warranties of Talent. Talent hereby represents and warrants to A&F that:

a. Talent has full authority and approval to enter into and undertake all of the duties and obligations placed on Talent by this Agreement and that the person signing has the requisite authority and legal capacity to sign on behalf of and bind Talent;

b. Talent has entered into no other agreements with any party that would conflict with or prohibit Talent from undertaking any of the material duties or obligations set forth herein, that would prohibit A&F from exercising any of the material rights granted to it herein or that require the permission or approval of any third party prior to undertaking any of the duties or obligations set forth herein;

c. Talent is the sole owner of Talent's likeness and rights of publicity licensed for use to A&F hereunder; and

d. except for A&F's contractual obligations to the contrary, if any, A&F shall not be required to make any payments of any nature whatsoever to Talent or third parties in connection with the grants, acquisition, exercise or exploitation of rights by A&F under this Agreement, unless specifically provided herein.

4.2 Warranties of A&F. A&F hereby represents and warrants to Talent that:

a. it has full authority and approval to enter into and undertake all of the duties and obligations placed on it by this Agreement; and

b. A&F has entered into no other agreements with any party that would materially conflict with or prohibit it from undertaking any of the material duties or obligations set forth herein or that would require the permission or approval of any third party prior to undertaking any of the duties or obligations set forth herein.

5. Confidentiality. Information exchanged between Talent and A&F (including its affiliates), designated in writing as confidential by the disclosing party at the time of disclosure to the receiving party, shall be held in confidence by the receiving party for a period of five (5) years from the date of receipt, except that no party will be required to hold in confidence:

a. information that is generally in the public domain when disclosed by the disclosing party to the receiving party, or which subsequently generally enters the public domain through no fault of the receiving party;

b. information that is already lawfully known to the receiving party prior to being disclosed to it by the disclosing party;

c. information that is separately disclosed to the receiving party by a third party having the legal right to disclose it; or

d. information that is required to be disclosed pursuant to a valid government or judicial order, provided that the party to which such government or judicial order is directed gives the other party sufficient notice to enable it to seek a protective order, and provided further

that the party to which such government or judicial order is directed complies with any protective order obtained by the other party.

Notwithstanding the foregoing, each party may disclose such confidential information to its legal counsel, accountant(s) and other agents.

6. Indemnification. Subject to any exculpatory language and provisions contained in the representations, warranties, and covenants of this Agreement, the parties agree to indemnify one another in accordance with the following:

a. Talent shall indemnify, defend, and hold harmless A&F, its subsidiaries, parents and affiliates, and the owners, officers, directors, agents and employees of each, from and against all third party claims, damages, liabilities, costs and reasonable expenses (including, but not limited to, third party attorneys' fees) arising out of or related to (i) the use of Talent's name or likeness as expressly permitted hereunder; (ii) the exercise of any rights granted by Talent to A&F hereunder; or (iii) any breach of the representations, warranties or covenants made by Talent herein.

b. A&F shall indemnify, defend, and hold harmless Talent from and against all third party claims, damages, liabilities, costs and reasonable expenses (including, but not limited to, attorneys' fees) arising out of or related to (i) A&F's breach of its representations and warranties as set forth above in Paragraph 4.2; or (ii) third party claims based upon A&F's use of any Image (excluding any claim for which Talent is obligated to indemnify A&F pursuant to clause (a) immediately above).

7. Reliance and Inducement. Talent understands and acknowledges that A&F has been induced to execute this Agreement in reliance on the representations and warranties of Talent as set forth herein.

8. Notice. Any notice, request approval or other communication required or permitted to be given hereunder shall be in writing, effective upon receipt, and delivered by fax (with receipt acknowledged), delivered personally, delivered by nationally recognized overnight courier (with receipt acknowledged) or mailed by certified mail, postage prepaid, return receipt requested (such mailed notice to be effective on the date such receipt is acknowledged or refused), as follows:

If to A&F, addressed to:

Abercrombie & Fitch Merchandising & Design Co.
6301 Fitch Path
New Albany, Ohio 43054
Attn: Mike Stevenson
Fax: (614) 283-6688

If to Talent, addressed to:

Vivien Lewit, Esq.
Davis Shapiro Lewit Montone & Hayes, LLP
689 Fifth Avenue, Fifth Floor
New York, NY 10022
Fax: (212) 230-5510

Notwithstanding the foregoing, for the purposes of providing notice of the commencement of the Use Period, notice provided by A&F or its agent to Talent's then-current agent shall be deemed

to meet the notice requirements hereunder. Talent's agent as of the effective date of this Agreement is Dan Dymtrow, 432 Park Avenue South, New York, NY 10016.

9. Force Majeure. If, by reason of any occurrence beyond the control of the parties hereto (including, but not limited to: war; act of terrorism; governmental requests, restrictions or regulations; fire, flood or other casualty; accident; strike or other difficulty with employees; or any other similar occurrence), the parties are not able to meet their obligations under this Agreement, the non-performing party shall not be liable therefor and may postpone performance of its obligations for a time which is reasonable under all the circumstances.

10. Miscellaneous.

10.1 Assignment. Neither party shall have the right to assign its rights, or delegate its performance, under this Agreement, or any interest herein, without the prior written consent of the other party. All covenants and agreements contained in this Agreement by or on behalf of the parties shall bind and inure to the benefit of their respective successors and permitted assigns. Notwithstanding the foregoing, A&F shall have the right to assign this Agreement, or delegate its performance under this Agreement, without Talent's consent, to any of A&F's affiliates.

10.2 Remedies. The remedies reserved in this Agreement are cumulative and not limited and are in addition to any other remedy provided by law or at equity.

10.3 Entire Agreement; Waiver. Except only as otherwise specifically provided in this Agreement, the terms of this Agreement are complete and supersede any prior or contemporaneous agreement, whether written, oral or implied, and none of such terms may be added to, modified, superseded or altered, except by a written agreement or modification signed by authorized officers or representatives of each party. No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by an authorized officer or representative of the parties, as appropriate, and then such waiver shall be effective only in the specific instance and for the specific purpose given. The failure to exercise any right or remedy under this Agreement shall not be deemed a waiver of the right to exercise such right or remedy at a later date.

10.4 Relationship of Parties. Each of the parties hereto shall be and remain an independent contractor and nothing herein shall be deemed to create an employment relationship between the parties or constitute the parties as partners or joint venturers. Further, the parties shall not have any authority to act, or attempt to act, or represent themselves, directly or by implication, as an agent of the others or in any manner assume or create, or attempt to assume or create, any obligation on behalf of or in the name of the others, nor shall any party be deemed the agent of the other.

10.5 Headings. Section headings are included in this Agreement for convenience only and shall not affect the interpretation of this Agreement in any manner.

10.6 Severability. If any provision of this Agreement is or becomes invalid or unenforceable under any law of mandatory application, it is the intent of the parties that such provision be deemed severed and omitted from the Agreement, the remaining portions of the Agreement to remain in full force and effect as written.

10.7 Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be a duplicate original, but all of which, taken together, constitute a single document.

10.8 Governing Law; Jurisdiction. This Agreement is governed by, and shall be construed in accordance with, the laws of the State of Ohio. The parties consent to the exclusive jurisdiction and venue of the courts of proper subject matter jurisdiction located in the City of Columbus, Franklin County, Ohio for all purposes related to this Agreement. Service of any process, summons, notice, or document by means pursuant to Section 8 hereof shall be effective service of process for any action, suit, or proceeding brought against any party hereunder in any such court.

IN WITNESS WHEREOF, the parties hereto, each representing and warranting that they are the duly authorized and appointed representative and signatory of the respective entities and individuals listed below, have each caused this Agreement to be executed by their respective duly authorized representative to be effective as of the date first set forth above. ~~By signing below without an accompanying valid consent, Talent represents and warrants that Talent is at least eighteen (18) years of age.~~

Talent: ____________ Taylor Swift

By: [signature]

Printed Name: Taylor Swift

Title: ____________

Date: 4/24/04

A&F: Abercrombie & Fitch Merchandising & Design Co.

By: ____________

Printed Name: ____________

Title: ____________

Date: ____________

Consent (If Applicable)

The undersigned certifies that he/she (i) is the parent or guardian of the minor named above, (ii) has the legal authority to execute this Agreement on behalf of such minor, and (iii) approves the foregoing terms and conditions and waives any rights in the premises.

Parent/Guardian: PARENT

By: X [signature]

Printed Name: ANDREA E. SWIFT

Title: MOTHER

Date: 4/24/04